# Kramer and Bell *versus* Goodlander. (No. 1.)

98 353
128 650

98 353
183 442

1. The provisions of the act of March 29th 1824, 8 Sm. L. 283, imposing a penalty of treble damages upon any one cutting and converting to his own use timber growing upon the land of another, without the owner's consent, was intended only to prevent the willful or careless cutting of another's timber.

2. Where therefore the owner of land, by his positive acts misleads his neighbor as to the extent of his claim, in consequence whereof such neighbor cuts and converts to his own use timber growing beyond his line, the owner of the land whereon the timber was cut, cannot take advantage of the provisions of the said act, and this, though he was at the time of the trespass ignorant as to the true location of his land.

3. A. and B. were the owners of adjoining tracts of woodland, A.'s land lying to the eastward of that of B. A., discovering that B.'s tract had an actual excess from east to west, of about 134 perches over its official length, procured a warrant for such excess, which was accordingly surveyed for him, being located immediately to the west of the tract formerly claimed by him. B. subsequently cut and converted to his own use timber growing upon the tract thus warranted and surveyed for A., whereupon A. brought an action against him under the provisions of the Act of March 29th 1824, Pamph. L. 152, to recover treble damages for the injury done. Before declaration filed, however, a line was discovered marked upon

2 OUTERBRIDGE—23

[Kramer *v.* Goodlander.]

the ground about 173 perches west of the line previously claimed by A. to be the west line of his original tract. This line A. now adopted as the true western boundary of his original tract, and, disregarding his recent warrant and survey, claimed on the trial to recover damages for all timber cut east of the new line. *Held*, that the plaintiff was not entitled to recover the treble damages claimed.

4. Although the conduct of the plaintiff barred his right to recover treble damages in the above case,—*Held*, nevertheless, that it did not defeat his title to the land on which the timber in question had been growing. Constructively, the party having a good title is in possession of unimproved land. Where the location of a tract of land is in dispute, evidence to the effect that surveyors who have had occasion to go upon the ground, and other parties interested, including the opposite party, have generally recognized a certain location to be the true one, is admissible, even though there may be other evidence in the case tending to show that such is not the true location.

5. In determining whether or not certain land is included within a seated tract upon which taxes have been paid, not only will the number of acres included in the assessment be considered, but also all the other evidence in the case, under proper instructions from the court.

6. A tax sale of land as unseated will convey no title to the vendee, when as a matter of fact the land sold constitutes part of a seated tract upon which the taxes have been paid.

June 14th 1881. Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. SHARSWOOD, C. J., absent.

ERROR to the Court of Common Pleas of *Clearfield county* : Of May Term 1880, No. 186.

This was an action of trespass, brought March 24th 1873, by George Goodlander against George Kramer, William E. Bell and others, to recover double and treble damages for cutting and converting timber trees on land claimed by the plaintiff.

In his declaration, filed December 31st 1878, the plaintiff averred that the trespass was committed upon a portion of a tract of land, being warrant and survey No. 1434, June 4th 1793, in the name of David Kennedy, Esq., to which tract the plaintiff showed title in himself.

The defendants admitted that if the location of the David Kennedy tract, No. 1434, as claimed by the plaintiff, were the true one, the timber had been cut within its lines. But they claimed that the true location of the David Kennedy tract was one tract to the eastward from where the plaintiff claimed. They further claimed that even if the plaintiff's location were correct, yet they were not liable to treble damages, because the plaintiff had always, until after suit brought, recognized the location of the David Kennedy tract as claimed by defendants, and had by his acts invited or acquiesced in and consented to the defendants' cutting timber on all but a very small portion of the

[Kramer *v.* Goodlander.]

land whose location is now disputed.    The principal question in the cause, was as to the true location of the David Kennedy tract.

On the trial, before Cummin, P. J., the evidence developed the following facts :

Tract No. 1434, in the name of David Kennedy, Esq., was a survey made June 4th 1793, in the form of a parallelogram. It calls for the Ann Kennedy, No. 305, on the north. The official draft of the survey indicated that the east line of the Ann Kennedy, No. 305, continued to the south was the east line of the David Kennedy, 1434. This survey called for vacant land on the other three sides. It called for a beech on the southwestern corner and for posts on the other corners.

No. 5862, Jonathan B. Smith, was a rectangular survey made December 8th 1808. Its northern portion calls for the David Kennedy, 1434, on the east, and for another David Kennedy, No. 386, a survey of 1785, on the west, thereby filling up the intervening space. Its other calls for older surveys on its north and south, were as shown in the accompanying plan. In the angle formed by its northern and western lines, a serviceberry is called for, which was found and identified. A birch called for at its south-west corner was also identified.

Between 1793 and 1873, several surveys of adjoining or neighboring tracts recognized the location of the David Kennedy tract, No. 1434, to be south of the east portion of the Ann Kennedy, 305, the east boundary of the two tracts being in the same line. The location of the Ann Kennedy, No. 305, and of the other David Kennedy tract, 386, is not disputed. In 1854 and 1855, Frederick Zeigler obtained warrants and surveys for the land bounded on the north by the Ann Kennedy, No. 305, on the east by the David Kennedy, 1434, on the south by the Johnathan B. Smith, 5862, and on the west by the Dr. William Smith, an old survey of 1785.

The defendants, Kramer and Bell, obtained title to the eastern and northern portion of the Jonathan B. Smith tract, by deed dated July 27, 1859.

The plaintiff's (Goodlander's) title to the David Kennedy, No. 1434, was under a tax sale of said tract as unseated land, made for taxes of the years 1862 and 1863, on June 14th 1864.

Goodlander subsequently discovered that the Jonathan B. Smith survey, in extending across from David Kennedy, 386, to David Kennedy, 1434, had an actual excess of about 134 perches over its official width (the official distance being 192 perches, and the actual distance about 326 perches). If limited to its official width, the result would be to leave a piece of vacant land between the east-line of the Jonathan B. Smith and the west line of the David Kennedy, 1434. On this theory, the plaintiff, Goodlander, obtained a warrant and survey in 1870 for this tract as vacant land, being 130 perches wide from east to west, and 445 perches long from north to south. Its calls were, on the east for the David Kennedy, 1434, and the Josiah

W. Smith, on the south for the Henry Beck, 5618, on the west for the Jonathan B. Smith, 5862, and on the north for the Frederick Zeigler.  In making this survey a new line was marked by the surveyor as its western boundary, forming the division line between it and the Jonathan B. Smith.  This new line, which Goodlander regarded as his western boundary, was at the distance of forty perches east of an old line of 1793, which was at that time unknown to any of the parties to this suit, but which was subsequently discovered as hereinafter mentioned.

·In the fall and winter of 1872, Kramer and Bell had cut all the timber on the eastern portion of the Jonathan B. Smith tract, owned by them up to Goodlander's new western line. They directed their jobber, one Pentz, to continue cutting west of that line.  To this he objected, having heard (as he testified on the trial) that Goodlander claimed up to that line under a recent warrant.  Kramer and Bell, however, claiming that the Jonathan B. Smith tract extended to the David Kennedy, 1434, on the east, directed him to·disregard the Goodlander survey of · 1870, which they claimed was laid on their land, and he accordingly crossed the line and began to cut timber on the Goodlander survey.

The plaintiff thereupon brought this suit, claiming three-fold damages.  The defendants were arrested and held to bail.  In the affidavit for a capias, filed March 24th 1873, the plaintiff alleged the trespass to have been committed, " on tract surveyed in name of George B. Goodlander, situate in Brady Township, adjoining No. 1434," etc.  No declaration was filed until December 31st 1878.

In the meantime, a careful examination of the country was made, and in August 1873, Thomas W. Moore, a surveyor, found a north and south line of 1793, about forty perches west of the Goodlander line of 1870, and about 173 perches west of the recognized location of the western boundary of the David Kennedy, No. 1434.  This line of 1793 extended for several miles.  Moore at once claimed this line to be the western boundary of the David Kennedy, No. 1434.  The effect of this was to move that tract 173 perches west of its accepted location and to leave the land it had been supposed to cover unoccupied. For this land, Moore immediately took out a warrant, on which survey was made and returned.

Immediately after this, the plaintiff, Goodlander, adopted Moore's theory, and claimed the line of 1793 as the western boundary of the David Kennedy, 1434.  The effect of this was to make that tract cover, not only all the northern portion of the Goodlander survey of 1870, but also to extend it between forty and fifty perches further to the west, thereby covering a strip

of land which had theretofore been recognized by Goodlander as a part of the Jonathan B. Smith tract, on which strip the defendants had, without objection, cut some three hundred thousand feet of timber. This strip is shaded in the plan.

The plaintiff afterwards, on December 31st 1878, filed his narr. declaring against the defendants for cutting timber upon a certain tract of land, " bounded on the north by lands occupied by Zeigler, et. al., on the east by lands claimed by Thomas W. Moore, on the south by other lands of the plaintiff and R. M. Hoover, and on the west by a survey in the name of Jonathan B. Smith, the said tract containing four hundred and thirty acres, more or less, and being warrant and survey 1434, in the name of David Kennedy, Esq., said tract being owned by said plaintiff."

It further appeared, at the trial, that Jacob Kuntz became the owner of the Jonathan B. Smith survey in 1849; that the owners of that survey always claimed that it extended from No. 386 to No. 1434, giving No. 1434 its recognized location; that upon this location of No. 1434, at the southwest corner where a beech was called for, there was still standing in 1849, a dead tree, marked as a corner, which Kuntz thought was a beech, and a pitch-pine marked as a witness; that there also was a line running from this corner north; that Kuntz bought the Smith survey as reaching to that boundary, and so claimed and held it. Kuntz also owned the tract No. 386. He put together and used as one body of land a portion of the eastern end of No. 386, and the eastern part of the Jonathan B. Smith survey. This body included all that part of the Smith survey intervening between the two Kennedy surveys. On it was a saw-mill, a house and several acres of cleared land. These improvements were kept up by successive owners as one property. The body of land appeared to have been claimed continuously and used by the successive owners as one property.

In 1859, Kramer purchased said property; he went around the land and saw its boundaries as claimed by the defendants in this suit. He purchased to those boundaries; but it does not appear that the distances were mentioned or the quantity calculated from actual measurement. The amount mentioned in the deeds and tax-books was seven hundred and thirty-five acres. This body of land was assessed on the seated list for 1862–1863, as seven hundred and thirty-five acres and saw-mill, and the taxes were paid in the seated lists of those years. The land was on the unseated list prior to 1860, but in that year Kramer put put it on the seated list. In 1870, Kramer sold to Bell; a survey was then made and the tract found to contain one thousand and twenty-two acres net measure, which would be nine hundred

and sixty acres with the usual allowance. After this, the assessment was changed to nine hundred and sixty acres. Before this, the parties did not know the number of acres. In 1871, Bell conveyed back to Kramer an undivided half. After this, Kramer and Bell continued to hold together.

The defendant presented, inter alia, the following points :

"2. The plaintiff's warrant, survey and patent, in his own name, in 1870, taking up the excess of the J. B. Smith at the east end, as vacant land, and calling for the D. Kennedy, No. 1434, on the east, and for the J. B. Smith survey on the west, together with his claim under his said survey and patent, was inconsistent with the claim he now makes to the land lying west of the said Goodlander survey, on what was represented on that survey as the J. B. Smith tract. This, with the record and the other evidence in the case, constitutes such a recognition of the J. B. Smith title, as to debar the plaintiff from recovering of double or treble damages, under the act of 1824, for the timber cut west of the Goodlander warrant. It is not such a cutting without the consent of the owner as is contemplated by the act of 1824."

"3. Especially is this true, when it further appears in evidence that the defendants claimed and held under color of the J. B. Smith title, the land immediately west of the Goodlander warrant, in connection with another smaller piece of an adjoining survey, as one property ; on which they, at and before the time the said Goodlander survey was made, as well as up to the bringing of this suit, had various buildings, and from six to twenty acres of cleared land, and a tenant residing there ; a part of which improvements were on the said J. B. Smith survey."

*Answer.* "These two points are connected very closely together, and we answer them together. We decline to charge you, as requested in those points. The Act of Assembly declares that persons cutting timber without the consent of the owner, shall be liable to pay double and treble damages, as we have before read to you, and it is for you to say whether this cutting was done with or without the consent of the owner. It is a question of fact for you." (Second and third assignments of error.)

"4. Under the facts in evidence of the character referred to in the last two preceding points, the plaintiff cannot maintain this action for the timber cut by the defendants, or under their order, before this suit was brought, west of the line of the G. B. Goodlander survey." *Answer.* "We decline to charge you as requested in this point ; the plaintiff claims to be the owner of the tract in the name of David Kennedy, No. 1434, and that the timber was cut upon that tract. If you find this claim

to be true, then the lines of the G. B. Goodlander survey cannot qualify the survey [against your finding.] It is of no importance where the lines of the Goodlander survey are, if you find the facts as stated." (Fourth assignment.)

" 6. If the location of the David Kennedy survey, as claimed by the defendants, has been recognized as the proper one, up to and about the time this suit was brought—by surveyors and others, whose business or interests had led them to look for it—this constitutes evidence bearing on the location of the survey, especially after the lapse of so great a time, as to render it difficult to prove the existence of the original landmarks."

*Answer.* " We decline to charge you as requested in this point. The question of this location of this tract of land is for you. In determining it, you must take all the evidence in the cause, and all the circumstances surrounding it; everything that has been brought before you here is for your consideration. You must give it such weight as you deem proper." (Fifth assignment.)

" 7. If, as testified by George Kramer, in 1862 and 1863, the land in dispute, on which this timber was cut, was within defined boundaries of a body of land on the seated list, held by George Kramer, one of the defendants, upon which body of land there were improvements, and the taxes were paid for those years; then this land was discharged from taxes, and George B. Goodlander got no title by the treasurer's sale of 1864, and cannot recover in this suit." *Refused.* (Sixth assignment.)

The court in the charge said to the jury, inter alia :

" A man who cuts timber is bound to know that he is cutting on his own land, or that he has the right or liberty from the owner to cut—otherwise he cuts the timber at his peril. He is bound to know the provisions of this Act of Assembly. It makes no difference whether he thought he was on his own land or not, or cutting his own timber or not; he is bound to know whether he is cutting his own or not. This is the provision of the Act of Assembly, and it is binding upon you as it is upon me."

Verdict and judgment for the plaintiff for $6,963.18. The defendants took this writ of error, assigning for error the answers to their points and the portion of the charge, as above given.

*McEnally* and *Jenks* (*McCurdy* with them) for plaintiffs in error.—The court erred in refusing to instruct the jury as a matter of law, as requested in our second point, that the plaintiffs' acts estopped him from claiming that the timber cut by the defendants, west of the line of the Goodlander survey, was cut upon his land without his consent within the meaning of

[Kramer v. Goodlander.]

the act of 1824, allowing treble damages.    The defendants, as
owners of the Jonathan B. Smith tract, which called for all the
land between the David Kennedy, 386, and the David Kennedy,
1434, in its accepted location, had color of title.    The plaintiff,
by locating the Goodlander warrant in 1870, gave notice that
he claimed a portion of the tract claimed by the defendants.
The boundary line of his claim was clearly marked on the
ground, and the defendants cut up to it without any objection.
When this suit was brought, the plaintiff made no claim for
timber cut west of the Goodlander line, as appears from his
affidavit for a capias, which complained only of cutting timber
on the Goodlander survey.    The declaration, filed five and a
half years afterwards, showed a different cause of action
founded upon a new theory of location of the David Kennedy
tract, No. 1434, never dreamed of by plaintiff or defendants
till after suit brought, and with which his original claim under
the Goodlander survey was wholly inconsistent.    These facts
were not disputed, and we submit that even if the location of
the David Kennedy, No. 1434, as now claimed by the plaintiff,
be the correct one, yet it was still the duty of the court to rule
as a question of law that the plaintiff's acquiescence by silence
in the defendants' title, at the time of cutting the timber, to all
the land west of the Goodlander survey amounted to implied
consent:    1 Greenl. on Evidence, § 197 a.    The court, how-
ever, submitted to the jury as a question of fact whether this
cutting was done with or without the consent of the owner,
erroneously assuming that consent, within the meaning of the
act of 1824, must be affirmative and cannot be implied.    On
what principle of law or equity, can Goodlander claim to re-
cover treble damages for the cutting by defendants outside the
line which he had himself marked as his boundary line, even
though he so marked it in mistake of his rights?    While such
act might not confirm the defendants' claim of title to all the
land outside of such boundary line, it indicated his consent to
their occupation and cutting of timber, until he made a new
claim.    The court, however, told the jury that if the plaintiff
were the real owner of the David Kennedy, No. 1434, and if the
true location of said tract covered this land, it was of no im-
portance where the lines of the Goodlander survey are.    This
was clearly error :  Boults v. Mitchell, 3 Harris, 371 ; Weitzel v.
Marr, 10 Wr. 463 ; 1 Greenl. on Evidence, §§ 167 to 199 ; 2
Whart. on Evidence, §§ 1146 to 1148 ; 1 Bright. Dig. 886 to 889.

    As to the question of the true location of the David
Kennedy tract, No. 1434, the court erred in its answer to our
sixth point, which should have been affirmed without qualifica-
tion.    In Pennsylvania, greater effect is given than in England,

in the case of private titles, to evidence of general reputation of ancient boundaries, including the declarations of deceased surveyors and adjoining owners: 1 Whart. on Evidence § 189; Caufman *v.* Presbyterian Congregation, 6 Binney 59; McCausland *v.* Fleming, 13 P. F. S. 36; Buchanan *v.* Moore, 10 S. & R. 275; Wray *v.* Miller, 2 Harris 289; Bender *v.* Pitzer, 3 Casey, 333; Birmingham Borough *v.* Anderson, 4 Wright, 506.

The court further erred in refusing to affirm or answer our seventh point. If the land was seated and sold as unseated, the plaintiff's title is worthless. If the taxes, for which the land was sold, had been actually paid by Kramer, whether assessed upon the good or bad title, or whether the tract contained more or less acres than were designated in the tax books, the plaintiff's title is worthless. It is the tract which is assessed, not the title or the acres, and this case, although not one of interference, falls within the principle recognized in Hunter *v.* Cochran, 3 Barr 105. See also Reading *v.* Finney, 23 P. F. S. 467; Williston *v.* Colkett, 9 Barr 38; Brown *v.* Hays, 16 P. F. S. 235.

*Krebs* (*Wallace* with him), for the defendant in error.—What the plaintiff knew about his own title is not the test of the defendant's liability under the act of 1824. The test of liability under the Act is that the cutting be done " without the consent of the owner." Consent implies affirmative agreement as to a matter of conduct, not mere silence in ignorance of facts or rights. One who undertakes to cut timber on land of which no one is in actual possession, is bound either to know that it belongs to himself, or to obtain the permission of the real owner. The line of 1793, which was proved on the trial to form the western boundary of the David Kennedy, No. 1434, was always on the ground, and was known or might have been known, by the defendants, before they trespassed over it. The circumstance that the plaintiff marked one or twenty lines on his own land, although done in ignorance of its true boundary, cannot relieve the defendants from the legal consequences of their trespass: O'Reilly *v.* Shadle, 9 Cas. 489; Watson *v.* Rynd, 20 P. F. Smith 59.

The question of location was settled in the court below, and no assignment of error raised it here, except the sixth, viz.: to the refusal to affirm the plaintiff's seventh point. This point is not predicated on the evidence, but is a vague and abstract proposition, which it would have been error to affirm.

Mr. Justice Trunkey delivered the opinion of the court June 21st 1881.

[Kramer *v.* Goodlander.]

In 1864 the plaintiff purchased the David Kennedy tract No. 1434, at treasurer's sale, sold for the taxes of 1862 and 1863, assessed as unseated.   This tract was warranted in 1792, surveyed in 1793, and patented to Robert Kennedy in 1815.   It does not appear that the plaintiff occupied it or ascertained its location until after the alleged trespass by defendants.   Before the cutting of the timber, on September 27th 1870, he procured a warrant on which he had a survey, and in October of the same year obtained a patent for a tract of land containing three hundred and forty-one acres sixteen and four-tenths perches and allowance, bounded on the west by the Jonathan B. Smith tract, and on the east by tract No. 1434.   The defendants owned the eastern part of the Jonathan B. Smith tract, No. 5862, warranted in 1804, and surveyed in 1808, one of them having purchased the same prior to 1859.   If the testimony on their part is true they bought and continuously claimed to the same line which the plaintiff made the eastern boundary of his said survey, namely, the west line of the David Kennedy tract.   The plaintiff now says he located a new warrant on land which he already owned, and in ignorance of the facts fixed the boundary thereof forty perches east of the line between his and the defendants' lands. He therefore demands, in case the jury find he did own the land prior to said location, three times the amount of actual damage done by the defendants in cutting and converting the timber outside the line of said location.

In view of the foregoing facts the court instructed the jury that if they found for the plaintiff for the timber cut between the line of the tract No. 5862, and the line of his said survey, he was entitled to treble damages under the Act of March 29th 1824, P. L. 152.   That statute in plain terms makes one who cuts timber on another's land and converts it, without the owner's consent, liable to treble damages although he had no knowledge that it was not on his own land: Watson *v.* Rynd, 26 P. F. S. 59.   The ruling of the learned judge was clearly right, unless the plaintiff, within the intendment of the statute, consented to the cutting and taking of the timber.   Consent may be shown by acts as well as words.   As the man who cuts timber is bound to know it is on his own land, or that he has the owner's permit, so the owner of timber land is bound to know where it is and to do no act to mislead an adjoining owner, or adverse claimant. He shall not mark a line on the ground and ostensibly invite a claimant to cut up to that line, and then recover three times the value of the timber.   It is not the purpose of the statute to enable him to sell his timber at such prices.   Its object is the prevention of willful or careless cutting of another's timber by at once punishing the wrongdoer and amply compensating the

[Kramer *v.* Goodlander.]

owner. Had the plaintiff known that tract No. 1434 was located where he now claims, and that the defendants claimed title to the same land, what interpretation would be given to his act? None other than that he defined his lines and attempted to perfect his title. Had there been a vacancy between tracts 5862 and 1434, as he believed, he would have no right against anybody for cutting timber without the lines of his survey. As respects others the plaintiff's acts must be treated as if he had known his rights. He who misleads another by positive acts as to the extent of the claim, shall be taken as inviting or consenting, and it makes no difference that he was ignorant of his title or of the location of his land. The defendant's second point should have been affirmed. That portion of the charge set forth in the seventh assignment, though correct, should have been accompanied by instruction that the acts of the plaintiff, in connection with the uncontroverted facts, evidenced that he gave liberty to the defendants to cut up to the line that he had marked on the ground. Were these acts not shown by written evidence, and other facts virtually conceded, the instruction should have been that if the facts assumed in the second and third points of defendants were true they were not liable for treble damages.

Although the plaintiff's conduct was equivalent to such consent as in good conscience ought to bar his right under the statute to recover three times the value of the timber, it did not defeat his title to the land, of which the timber was a part. Constructively, the party who has good title is in possession of unimproved land, and the evidence does not take this case out of the rule. The defendants' fourth point was rightly refused.

We think the circumstances of this case required affirmance of the defendants' sixth point, namely, "If the location of the David Kennedy, as claimed by the defendants, has been recognized as the proper one up to and about the time this suit was brought—by the surveyors and others whose business or interests led them to look for it—this constitutes evidence bearing on the location of the survey, especially after the lapse of so great a time as to render it difficult to prove the existence of the original landmarks." The facts in this point are not assumed, and the jury would have been warranted in finding them. A number of surveyors, also persons interested, had had occasion to look for the location of the tract, and if all, not part, including the plaintiff himself, had so recognized its location it was evidence to consider, its strength or weakness depending on the other evidence in the cause. If there were no other evidence this would determine the location, and would be admissible for the same reason that hearsay of deceased persons is evidence in case of an old boundary. Because there is other evidence this

[Kramer *v.* Goodlander.]

should not be excluded.   Except the denial, the remarks of the court in answer to the point were entirely correct.

We are of opinion that it was error to deny the defendants' seventh point.   George Kramer testified that he bought the land as one body, including the eastern part of the Smith survey, No. 5862, and a small part of the David Kennedy tract, No. 386 ; that the boundaries were described and shown to him by Kuntz and Bailey, and extended to the David Kennedy line on the east, including the land in dispute within his lines ; that there were four or five acres cleared, a house, stable and fruit trees, also a saw-mill on the land at that time ; that the improvements were partly on both tracts, and he held the land together as one property ; that in 1860 he changed the land from the unseated to the seated list and paid the taxes for the years 1861, 1862 and 1863, and for years subsequently.   If these were the facts, a sale of part of the land as unseated for the taxes of 1862 and 1863 vested. no title in the purchaser.   Kuntz owned the land, as he says, for several years prior, had it surveyed by David Ferguson, the east line being where the defendants now claim, and the land now in dispute was within his lines.   Both Kuntz and Kramer claimed to the Kennedy tract, No. 1434, they did not include any part of that tract knowingly, and contend that the land in dispute is part of the Jonathan B. Smith tract.   The real question is, whether the land in dispute was actually included within defined boundaries, the whole being assessed as seated.   This would not be alone determined by the number of acres in the assessment, but the quantity would be a fact to consider with other testimony, having greater or less weight according to the circumstances.   Very likely the court was of opinion that if Kramer had mistakenly claimed to the east line of tract, No. 1434, thereby including it in his body of land, that did not make it a part of his seated tract extending only to the west line of No. 1434 ; and that, if said tract is located where the plaintiff claims, it is vested in him by the tax sale and treasurer's deed.   Nevertheless the defendants were entitled to an affirmance of the point, though with full and proper instructions they might well have found that the land in dispute is part of the David Kennedy tract, No. 1434, and that said tract was rightly assessed and sold as unseated.

Judgment reversed and venire facias de novo awarded.