# DUNBAR FURNACE CO. v. FAIRCHILD ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF FAYETTE
COUNTY.

Argued May 7, 1888—Decided October 1, 1888.

1. To entitle a plaintiff to recover treble damages for timber trees cut and converted by the defendant, under § 3, act of March 29, 1824, P. L. 283, it is necessary that the plaintiff declare specially with direct reference to the terms of the statute.

2. If the pleadings of record prior to the verdict do not justify a larger finding than for single damages, the act of March 14. 1872, P. L. 25, allowing amendments of defects of form after verdict, is inapplicable to authorize a subsequent amendment of the narr, in order to bring the recovery within the act of 1824.

3. If the plaintiffs, or some of them, in such an action, know of defendant's cutting and removal of the timber and consent thereto, to be inferred from their acts or words, treble damages under said act are not recoverable.

4. Where, in such an action, the bona fides of the defendant is fairly impeachable under his own evidence of title, it is not error to refuse to charge that if the defendant cut and removed the timber under a bona fide claim of right, there could not be a recovery of treble damages.

5. If, in such an action, the amount of the verdict rendered include both damages and interest, it is error for the court to enter judgment for a sum treble the amount of the verdict as rendered, including the interest.

Before Gordon, C. J., Paxson, Green and Williams, JJ., Trunkey, Sterrett and Clark, JJ., absent.

No. 50 January Term 1888, Sup. Ct.; court below, No. 168 September Term 1881, C. P.

On August 25, 1881, an action of trespass q. c. f. was brought by John W. Fairchild, W. W. Fairchild. J. A. Fairchild and others, against The Dunbar Furnace Company. The narr, filed September 5, 1881, charged that the defendant on September 1, 1881, with force and arms broke and entered the plaintiffs' close in Dunbar township, containing about 362 acres, and "then and there mined, dug and carried away the iron ore and other minerals therefrom, and felled and carried

away the timber thereon standing and growing, and other wrongs then and there to the plaintiffs did, against the peace and dignity of the commonwealth of Pennsylvania and to the damage," etc. The defendant pleaded not guilty.

On November 27, 1886, the plaintiffs by leave of court, under objection and exception to defendant, filed an amended narr, which as again amended on the trial contained the count following:

'And for that the plaintiffs were in peaceable possession of the lands aforesaid, and had so been possessed of the same for a long time before the bringing of this suit, the defendant knowing that the said land did not belong to the said defendant, but belonged to the plaintiffs, the defendant did wrongfully and wilfully enter upon and cut, take and carry away large amounts of growing timber, then and there being and standing upon said land, and did convert the said timber so cut as aforesaid by the defendant to the defendant's own use, which said timber was of the value of ten thousand dollars, to the damage of the plaintiffs of three times the value of said timber, to wit, of $30,000.[1]

The defendant added the plea of the statute of limitations.

At the trial on December 13, 1886, the facts shown were in substance, the following:

On April 1, 1854, John Martin, owning a tract of mountain land containing about 362 acres, and known as part of the John Parker, Sr., tract, made an agreement in writing with his son, William J. Martin, providing that, in consideration of $200 to be thereafter paid, "said John Martin doth agree to grant to said William J. Martin the right and privilege of digging all the ore on his place and lands." This agreement, with payments amounting to $150 indorsed on it, was recorded on November 10, 1855.

On January 21, 1862, by deed recorded the next day, John Martin and wife conveyed to Catharine C. Fairchild "all the estate, right, title, claim and interest" of the grantors in said tract of 362 acres. Catharine C. Fairchild died in October, 1865, leaving to survive her her husband, Alexander Fairchild and the plaintiffs, who were her children. On November 15, 1865, Alexander Fairchild by a contract under seal agreed with the Youghiogheny Coal & Iron Co.,

Statement of Facts.

to grant, bargain and sell unto the said party of the second part the free and uninterrupted right of way in, upon and out of, all that certain tract of land, situate in Dunbar township, aforesaid, conveyed by deed of John Martin and wife to Catharine C. Fairchild, being part of the tract called by name of John Parker, Sr., . . . . . for the uses and purposes following, namely : To build and construct and use tram or other roads, to build cabins, houses, etc., near the line of the tram road ; to dig and mine iron ore and remove the same off the premises ; to cut and make use of such timber growing upon said premises (except such chestnut oak trees as will make bark, and locust timber trees) as may be needed for constructing and using such roads and mining or digging and removing said iron ore : together with all the liberties and privileges incident to or necessary for the full enjoyment and use of said land and premises for the purposes hereinbefore specified, the said company agreeing to do no unnecessary damage and to avoid all injury to the crops or farming of said land ; the said use and enjoyment, rights and privileges to commence immediately upon the execution of this agreement. In consideration of the premises the said party of the second part hereby covenants and agrees to grant and convey to said party of the first part that certain piece or parcel of land situate in said township, adjoining land now owned by or in possession of said Fairchild on the east side thereof, and to commence on the northeast corner of said Fairchild's land, and running thence . . . . . a distance that will include 100 acres by returning to the starting point, excepting and reserving to said company all iron ore, coal or other minerals therein, and all necessary mining rights and privileges for the obtaining and removing the same. . . . . The said party of the second part hereby agrees to make and deliver to said party of the first part a good and sufficient deed for said piece of land of 100 acres, with allowance, on receiving a good and sufficient deed from said Fairchild, etc. . . . . .

It was shown that the Fairchilds moved upon the tract in dispute in 1863, and the defendant claimed that the plaintiffs worked ore in the land and used timber therein, in the employ of the Youghiogheny Coal & Iron Co. Alexander Fairchild died in 1872.

It was agreed on the record that the plaintiffs' and defendant's title, as put in evidence at a former trial on May 4, 1886, should be considered in evidence, and it was stated in the paper book of the defendant, though the papers themselves were not shown, that " These papers put the title of William J. Martin to the ore in the John Parker, Sr., or Fairchild tract, in the defendant, and the title of the Youghiogheny Iron & Coal Co. to the timber, also in the defendant, prior to the trespass alleged in this case." The defendant took possession and began mining operations upon the land in 1876.

It was agreed that the quantity of ore mined should be considered for the purposes of the trial to be 32,006 tons.

J. A. Fairchild, one of the plaintiffs, testified in chief as to the value of the timber cut and used, to a ton of ore mined. On cross-examination, it was proposed by the defendant to ask:

Q. What would it be worth to cut and haul and put it in place? A. It would be owing to the kind of roof. Q. Well, what would be the average price per ton? Objected to by plaintiffs as not a proper cross-examination.

By the court: Objection sustained.[2]

The court, INGHRAM, P. J., charged the jury that no recovery could be had for the value of the ore mined, as the defendant held the title of William J. Martin under the contract with his father of April 1, 1854, but plaintiffs were entitled to recover the value of the timber cut and carried away during six years prior to the time the suit was brought.

The defendant's points were thus answered:

1. That under all the evidence in this case, the plaintiffs are not entitled to recover for the ore taken.

Answer: Affirmed.

2. That under all the evidence in this case, the plaintiffs are not entitled to recover for the timber taken.

Answer: Refused.[3]

3. That if the jury find from the evidence that the defendant company or those under whom it claims, at the time the title to the premises vested in the plaintiffs, was taking the timber off this land under a bona fide claim of right, and continued to do so till after the bringing of this suit, the defendant had such possession as would prevent a recovery for the timber.

Answer: Refused.[4]

4. That, under the pleadings and evidence in this case, the plaintiffs cannot recover treble damages for the timber cut and removed by the defendant.

Answer: Refused.[5]

5. That if the plaintiffs knew that the defendant was cutting and removing the timber under a bona fide claim of right, and made no objection thereto, they cannot take advantage of the act of March 29, 1824, and recover treble damages.

Answer: Refused.[6]

6. That under the act of March 29, 1824, to prevent a recovery of treble damages, an affirmative consent of the owner of the timber is not required ; an implied consent is sufficient.

Answer : Refused.[7]

7. That the act of March 29, 1824, under which part of the claim in this suit is made, was intended only to prevent the wilful or careless cutting of another's timber ; and that if the jury find from the evidence that the defendant cut and removed the timber under a bona fide claim of right, the plaintiff, if entitled to recover at all, cannot recover treble damages for cutting and removing the same.

Answer : Refused.[8]

8. That if the plaintiffs knew of, and acquiesced in defendant's cutting and removing the timber and made no objection thereto, the jury may find that it was done with plaintiffs' consent, and that, therefore, if entitled to recover at all, they cannot recover treble damages.

Answer : Refused.[9]

9. That if the jury find from the evidence that the plaintiffs knew of and acquiesced in defendant's cutting and removing this timber, and shortly prior to the bringing of this suit demanded of defendant the deed for the one hundred acres of land referred to in the agreement of November 15, 1865, between Alexander Fairchild and the Youghiogheny Iron & Coal Co., this would show plaintiffs' consent to the defendant's cutting and taking the timber, and there could be no recovery of treble damages in this action.

Answer : Refused.[10]

10. That under all the evidence in this case, the plaintiffs are not entitled to recover.

Answer : Refused.[11]

The jury returned a " verdict for the plaintiffs, single damages and interest amounting to $2,320.70." On December 16, 1886, a rule on defendant was entered, to show cause why the amount of damages found by the jury should not be trebled. On September 15, 1887, the rule was made absolute and judgment entered for the plaintiffs for treble damages amounting to $6,962.10.[15] The defendant then took this writ. The errors assigned were :

1. The permission to file the amended narr. [1]

2. The refusal of the defendant's offer. [2]

3–11. The answers to defendant's points. [3 to 11]

12–14. The inadequacy of the instructions as to the measure of damages.

15. The order trebling the amount of damages found by the verdict. [15]

*Mr. S. L. Mestrezat* (with him *Mr. Charles E. Boyle*), for the plaintiff in error:

1. The action of trespass q. c. f. is founded upon the possession of the land, and not upon the right of property in it; hence the owner can in no case maintain an action for a trespass committed upon it whilst it is in the possession of another: Greber v. Kleckner, 2 Pa. 291; Weitzel v. Marr, 46 Pa. 464; Woodward v. Tudor, 81* Pa. 382; Berkey v. Auman, 91 Pa. 481. The defendant was lawfully in possession of the timber, and could only be dispossessed by an action of ejectment: Narehood v. Wilhelm, 69 Pa. 64. Wherefore, under the facts of this case, trespass would not lie.

2. Treble damages are given as a penalty for violating the act of March 29, 1824, 8 Sm. L. 283. To recover this penalty an action on the statute must be brought, and not an action at common law, and the averment of the injury must conclude contra formam statuti. Neither the original nor the amended narr was sufficient to entitle the plaintiffs to a recovery of treble damages, as is settled by many cases: Morrison v. Gross, 1 Browne 1; Rees v. Emerick, 6 S. &. R. 287; Campbell v. Finney, 3 W. 84; Newcomb v. Butterfield, 8 Johns. 264; Livingston v. Platner, 1 Cow. 175; Hughes v. Stevens, 36 Pa. 320; Clark v. Sargeant, 112 Pa. 17. The narr, even as amended, was also defective in not averring that the plaintiffs were the owners of the timber, and that it was taken without their consent: Watson v. Rynd, 76 Pa. 59.

3. Moreover, the verdict was "for the plaintiffs, single damages and interest amounting to $2,320.70." The amount of damages and interest, respectively, does not appear, and under the instructions of the court, it is presumable that interest formed part of the amount awarded. The plaintiffs were not entitled to have the damages and interest trebled under the stat-

ute, but only the value of the trees cut and removed, and that value must appear by the special finding of the jury : Campbell v. Finney, 3 W. 84; Hughes v. Stevens, 36 Pa. 324.

4. It was in evidence and the plaintiffs themselves admitted that from 1876 to 1881 they assisted in mining the ore for the defendant, and saw its employees cutting the timber and hauling it to the mines. By general consent both the ore and timber were regarded as belonging to the defendant. The conduct of the plaintiffs was an implied consent on their part, and they are therefore estopped from the benefit of the act of 1824: Kramer v. Goodlander, 98 Pa. 363; Bethlehem South Gas & W. Co. v. Yoder, 112 Pa. 136; O'Reilly v. Shadle, 33 Pa. 491.

5. It was the duty of the court to charge fully upon the law applicable to the facts of the case as established by the testimony, and to fairly put the cause to the jury on the law as well as the facts : Garrett v. Jackson, 20 Pa. 336; Herron v. Fry, 2 P. & W. 272; Galbraith v. Black, 4 S. & R. 209; Seely v. Alden, 61 Pa. 302. Where the general tenor of the charge inadequately presents the case to the jury, and manifestly misleads them as to the true points of inquiry, it is ground for reversal: Gregg Tp. v. Jamison, 55 Pa. 474; Youngman v. Miller, 98 Pa. 196; Bisbing v. Bank, 93 Pa. 82; Slaymaker v. St. John, 5 W. 32; Farley v. Ranck, 3 W. & S. 555.

*Mr. Edward Campbell* (with him *Mr. R. P. Kennedy*), for the defendants in error:

1. Where trees are excepted in a lease, the land on which they grow is necessarily excepted also; consequently, if the tenant cut down trees, the landlord may maintain trespass for breaking his close and cutting down the trees: 2 Selw. N. P. *1324. It is impossible that defendant had a belief of a bona fide claim of right to cut timber. Under the John and William J. Martin paper, there was nothing but a license to dig ore; and under the agreement of Alexander Fairchild with the Youghiogheny Coal & Iron Co., there was but a sale by a life tenant of but a right of way, a right to dig and remove iron ore, and to cut such timber as might be necessary for roads and mining purposes, with the right of revocation at any time.

2. The narr in this case is drawn in the very words of the act of 1824, which has always been held to be more certain in

indicating the character of a declaration, than the conclusion: 2 Chitty, Pl., 184* n. x. But the plaintiffs contend that under the act of March 14, 1872, P. L. 25, this court would not reverse the judgment, even if there were no declaration in the case, much less would there be a reversal for a defective declaration. It was decided by this court before the act of 1872, that after a writ of error sued out a declaration may be amended: Wampler v. Shissler, 1 W. & S. 365; and that this court will consider as made amendments which might have been made in the court below. If the facts necessary to sustain the verdict are to be found in the testimony, this court will not reverse: Downing v. Lindsay, 2 Pa. 382; Morris v. McNamee, 17 Pa. 173; Spackman v. Byers, 6 S. & R. 385; Miller v. Weeks, 22 Pa. 89; Trego v. Lewis, 58 Pa. 463.

3. "The man who cuts timber is bound to know it is on his own land, or that he has the owner's permit:" Kramer v. Goodlander, 98 Pa. 363. "No man should strip the timber from land, unless he has a title to it, or a well grounded and conscientious belief that he has the title:" O'Reilly v. Shadle, 33 Pa. 491. The act of 1824 provides that whoever shall cut timber on the land of another without the consent of the owner, shall be liable to pay to the owner double the value thereof; and if the trespasser shall convert the timber so cut to his own use, he shall be liable to pay the owner treble the value thereof. If anything more is necessary to entitle the plaintiffs to hold their verdict, they know not what it is. An error in the amount, if the defendant can point one out, this court will no doubt order to be corrected without reversing the judgment.

OPINION, MR. JUSTICE GREEN:

The verdict in this case was rendered in favor of the plaintiffs for "single damages and interest amounting to $2,320.70." How much of the verdict was for interest and how much for the single damages, it is impossible to learn, as the two are aggregated, and the verdict says nothing as to the amount allowed for the damages. The learned court below, on a rule for that purpose, trebled the whole amount of the verdict and entered judgment for $6,962.10. As this included interest as well as damages, and as neither the act of 1824, nor any other law, allows the interest to be trebled, it was error to enter

judgment for three times the whole amount of the verdict, and the fifteenth assignment of error must be sustained.

We think the question put to James Fairchild on cross-examination and rejected, should have been admitted, and the second assignment is sustained. The question was in the line of the examination in chief.

Neither the original nor the amended narr, counted upon the act of 1824, and as the only object of the amendment was a recovery under that act, it did not help the cause of action. It has been many times decided that in order to recover under that act, it is necessary to declare specially upon its terms, and that a common law action of trespass will not suffice. In Hughes v. Stevens, 36 Pa. 320, we said: "The counts in the narr are in accord with the common law actions, and there is in them no reference whatever to the statute under which the recovery of treble damages is claimed. This is undoubtedly an omission which precluded the plaintiff's right to treble the damages. . . . . The statutory action is, cumulative to the common law remedy, or perhaps rather an optional or alternative remedy, for a resort to either would be a bar to the other. But if the statutory action be intended, the defendant should be apprised of it in the usual way, namely, in the narr, so that he may shape his defence accordingly. We have held it to be sufficient that the narr conclude with an averment that the trespass was against the act of assembly," etc. The difficulty with the present case is, that there is not only no conclusion contrary to the form of the statute, etc., but there is no allegation of any other kind that the action is brought under the statute. The first assignment is sustained, and also the fifth.

The act of 1872 has no application in such a case, because the amount to be recovered depends upon the pleadings prior to the verdict. If the pleadings do not justify the larger verdict, no such verdict could be lawfully rendered, and therefore it cannot be sustained by a subsequent amendment.

It is clear upon the authorities that if the plaintiffs, or some of them, knew of the defendants cutting and removing the timber, and consented thereto without objection, they would not be entitled to treble damages; and it is also true that such consent may be inferred from acts as well as words. In Kramer

v. Goodlander, 98 Pa. 363, we said: "The ruling of the learned judge was clearly right unless the plaintiff within the intendment of the statute consented to the cutting and taking of the timber. Consent may be shown by acts as well as words. As the man who cuts timber is bound to know it is on his own land, or that he has the owner's permit, so the owner of timber land is bound to know where it is, and to do no act to mislead an adjoining owner or adverse claimant." As there was undoubted evidence of the assent of some of the plaintiffs to the cutting and removing of the timber by the defendant, the eighth point of the defendant should have been affirmed, and the ninth assignment is therefore sustained. The same is true of the sixth point, and the seventh assignment is sustained.

This ruling would apply also to the fifth and seventh points, but, as they both include the idea that the cutting was done under a bona fide claim of right, we cannot say there was error in refusing the points in their entirety. We cannot see how the cutting can be regarded as having been done under a bona fide claim of right. That claim, as we understand it, is founded upon the agreement with Alexander Fairchild, made in 1865. He was the father of the plaintiffs, and had a life estate in the land. It is true, he assumed to grant the right to cut the timber absolutely, and it was good as against him and those claiming under him. But the title of the plaintiffs was derived from their mother, and the lawful extent of their father's grant would necessarily be limited by the extent of his interest. His interest ceased with his life, and this the defendant was bound to know. With this knowledge it can scarcely be said that a claim against the plaintiffs, founded upon the agreement with their father in 1865, is, or is to be regarded as a bona fide claim of right. There is, indeed, a provision in that agreement for the conveyance to Fairchild of a tract of one hundred acres in consideration of the grant, but it was not to be delivered until such other deeds, as were necessary to perfect the title which Fairchild attempted to convey, were obtained and delivered. As we understand, this part of the Fairchild agreement was never carried out on either side. and the bona fides of the claim of right to the timber remains impeachable, because of Fairchild's manifest lack of right to affect the interest of his children. The sixth, eighth and tenth assignments are therefore not sustained.

We think there should have been more definite instruction than is found in the charge on the measure of damages, but we are not inclined to reverse on that ground, and the remaining assignments are not sustained.

Judgment reversed, and a new venire awarded.