## Cummings *against* Cummings.

5 WS 553
34 SC 545

In an action to recover the amount of money which the defendant received upon an assignment obtained by misrepresentation and fraud, the repetition of the misrepresentations made after the date of the assignment are competent evidence of the defendant's bad faith from the beginning.

It is also competent, in such case, to prove that the plaintiff, in making the assignment, acted in confidence of the truth of the defendant's misrepresentations.

The practice of excluding evidence by the force of counteracting evidence is erroneous.

ERROR to the Common Pleas of *Lycoming* county.

John Cummings, Esq. against Thomas Cummings. This was an action of *assumpsit* for money had and received by the defendant for the use of the plaintiff, and for money paid, laid out and expended by the plaintiff for the defendant; to which the defendant pleaded *non assumpsit* and payment with leave, &c.

In 1837 the plaintiff, John H. Cowden, and John E. Oliver, entered into two contracts with the Susquehanna Canal Company under the name of Cummings, Cowden & Oliver, for the construction of two sections of the canal, Nos. 22 and 23. The construction of the sections was finished under the name of this firm. Some time after the execution of the contracts was begun, George E. Roberts was employed by them as a manager and assistant on the work. He was to have one equal share with the first-named partners, although his name was not used in the contracts and business of the firm. The plaintiff introduced Thomas Cummings upon the work in the same character and for the same purposes as Roberts had been engaged, and told him he should share with him (the plaintiff) and fare as he did; and that, if the other partners would agree, he should be taken in to have an equal share. This was subsequently done; no change having been made in the name of the firm; but the interest was thus divided into five shares; the execution of the work was afterwards under the joint and common direction of Roberts and the defendant, until the completion of it. The partners, Cummings, Cowden & Oliver, authorized Thomas Cummings to receive money for estimates of work done from the company, under which authority he received the greater part of the money paid for the entire execution and completion of the canal sections, including the final estimates.

On the 11th May 1838, Thomas Cummings purchased the remaining interest of the plaintiff for the sum of $200, to secure the payment of which he executed and delivered his single bill to the plaintiff, which had not yet been paid. The plaintiff alleged that this transfer was procured and obtained by the defendant under

v. — 70                    2 w

[Cummings v. Cummings.]

false representations of the condition of the concern, and was therefore fraudulent and void. This action was brought to recover the amount of the share of the plaintiff received by the defendant, upon the final settlement of the partnership accounts.

After the plaintiff had given evidence of the misrepresentations of the defendant made before the assignment, he offered to prove that after he obtained it, he persisted on several occasions, and after he had received a large amount of money, in repeating fraudulent misrepresentations to the plaintiff; and that he continued these misrepresentations after he knew the final result of the concern. The defendant objected to this evidence, and the court overruled it and sealed a bill of exceptions at the instance of the plaintiff.

John Cummings, the plaintiff, having assigned all his interest in the claim made in this suit to A. V. Parsons, Esq. and paid all the costs which had accrued and which might accrue, was sworn as a witness, and it was proposed to prove by him, " that relying upon the misrepresentations of the defendant, and believing them to be true, he was induced to sell him his share, as stated." The defendant objected to the evidence offered, and the court overruled it and sealed a bill of exceptions.

The defendant offered to prove that during the execution of the contract, and before the assignment, it was sickly among the hands at the work, and he himself was sick. The plaintiff objected to this evidence, but the court overruled the objection and the evidence was given and the plaintiff excepted.

The plaintiff offered in evidence certain depositions to prove material facts in the cause, and, *inter alia*, the partnership which existed between Cummings, Cowden & Oliver. The defendant objected to this on the ground that there was a written contract of partnership, and to sustain his objection he called a witness who testified on the subject of the objection.

The jury rendered a verdict for the defendant.

The several matters contained in the bills of exception were assigned for error.

*Ellis* and *Bellas*, for plaintiff in error.
*Armstrong* and *Campbell*, contra.

The opinion of the Court was delivered by

GIBSON, C. J. — Assertions made subsequently to the execution of a conveyance are not evidence to affect the title of the grantee; but are not a man's assertions, whenever made, evidence to affect himself? The court refused to let the plaintiff prove that the defendant subsequently persisted in the same misrepresentations which led to the assignment, when he could not have been ignorant of their falsity; and would not persistance in a known falsehood be pregnant proof of bad faith from the beginning? Men are seldom guilty of gratuitous dishonesty; and the defendant's

[Cummings v. Cummings.]

object was either to get back his note or to conceal a fraud in the transaction which gave birth to it; and whether it was the one or the other, the offer was proper. The man who would stoop to procure the release of a debt by a falsehood, would not hesitate to lie in contracting it. The attempts of a criminal at concealment spring from a consciousness of guilt; and why not admit evidence to show the attempts of one who is charged by the very nature of the action with a moral offence? It is said by text-writers, that intention, which is an invisible act of the mind, can be judged of only by the visible acts which follow it. Surely, then, the original existence of a trick may be inferred from an unfair attempt to push an advantageous bargain still further, or from the utterance of a falsehood to conceal an original vice in it; for where there is no criminality, there is nothing to conceal. On this principle it is, that the utterance of a forged note is deemed evidence of the previous existence of a criminal design. The defendant's subsequent misrepresentations, when he could not have been mistaken in the fact, would have gone far to prove the wilful falsity of his previous story; and they ought to have been suffered to pass to the jury.

The offer to prove that the plaintiff acted in confidence of his truth, was also proper. Proof that he had thus been induced to part with his interest in the job, was necessary to his case; for unless he was injured by the deceit, it could give him no right of action.

The evidence of sickness among the labourers, unqualified as it was in point of time, and of the defendant's own illness in particular, was erroneously admitted. The prevalence of an epidemic at or before the time of the assignment, might have given the colour of truth to a representation that the prospect of gain from the job was so unfavourable as to justify a belief that it would end in a loss; but there is nothing to justify such a belief at the time material to the question, in the prevalence of an epidemic which had not then broken out. Evidence that sickness had retarded the work and raised the price of labour so much as probably to make the job a losing one, would have been pertinent; but the representations which led to an assignment of the plaintiff's interest in it, were made early in May 1838, and the evidence of the sickness had regard to the latter part of that year and the subsequent one. The evidence of the defendant's own illness was equally incompetent, and more mischievous. By becoming the active partner, he took the risk of his own health upon himself; yet his illness was doubtless taken to be a legitimate subject of compensation. I infer this from the absence of every other specious pretext for the verdict that followed, and from an experimental knowledge of the ease with which a false commiseration runs away with a jury's brains. At all events, the fact may have been so; and the evidence ought not to have been admitted.

[Cummings v. Cummings.]

The remaining bill of exceptions is not sustained; but a particular matter which was suffered to pass *sub silentio* in the court below, ought not to pass without remark here, as it recurs with provoking frequency, despite the decisions of this court, for instance, in *Childerston* v. *Hammon*, (9 *Serg. & Rawle* 68); and *Fisher* v. *Kean*, (1 *Watts* 278). I allude to the practice of excluding evidence by force of counteracting evidence; which casts the decision of the facts and the credibility of the witnesses on the court, instead of the jury, and which might turn a plaintiff out of court before he could plant his foot in front of the jury-box. Preliminary questions of fact, involving, for example, the interest of a witness or the execution of an instrument, must necessarily be determined by the Judge, or referred, at his discretion, to the jury; but the production of proof that a contract had not been reduced to writing, is not a preliminary step to proof of its terms by parol. For the credit of the profession, I trust that no further trace of this anomalous practice will appear in our books.

Judgment reversed, and a *venire facias de novo* awarded.