# Mitchell Coal and Coke Co. *v.* Pennsylvania R. R. Co., Appellant.

*Carriers—Railroad companies—Discrimination in rates—Practice—Statement of claim—Amendments—New cause of action—Evidence—Intrastate commerce—Unlawful charges — Voluntary payments—Statute of limitations—Concealment.*

1. In an action of trespass to recover damages from a railroad company for unlawful discrimination in allowing rebates and drawbacks to plaintiff's competitors, plaintiff was not entitled to amend its statement of claim so as to claim damages for acts of discrimination not charged in the original statement, and alleged to have occurred more than six years before the application to amend was made, as such amendment would set up a new cause of action, barred by the statute of limitations; or to change by amendment an action for unlawful discrimination at the common law to an action for the recovery of the penalties prescribed by the Act of June 4, 1883, P. L. 72, in cases of unlawful discrimination, where the application to amend was made more than six years after the discrimination complained of was practiced.

2. Where in such action plaintiff contended that defendant's fraudulent concealment of its discriminatory practices had tolled the running of the statute of limitations as to discriminations practiced more than six years before the action was brought, but the only evidence offered in support of the alleged concealment was that defendant's coal freight agent had told the president of the plaintiff company that in future plaintiff would be charged the same rates as other shippers, and would be notified of any additional concessions made to other shippers, the court did not err in holding the evidence offered insufficient to toll the statute of limitations.

3. Recovery for discrimination in rates charged plaintiff on certain shipments consigned to it at a point near the border of the State was properly allowed, as such shipments were intrastate shipments, although plaintiff might later have sent them to points outside the State.

4. Where in such action it appeared that plaintiff had paid the freight demanded by defendant on shipments as to which the discrimination was alleged, though plaintiff knew that defendant was allowing other shippers unlawful rebates on similar shipments, plaintiff was in no way precluded from recovering damages measured by the rebates allowed its competitors, even though its pay-

ment of the charges demanded was voluntary, as plaintiff was not seeking to recover amounts paid in excess of the lawful charge, but damages for breach of defendant's duty as a common carrier not to discriminate unduly against plaintiff.

Argued April 24, 1913.  Appeals, Nos. 91 and 104, Jan. T., 1913, by plaintiff and defendant respectively, from judgment of C. P. No. 3, Philadelphia Co., March T., 1905, No. 543, on findings of a referee in favor of plaintiff in case of Mitchell Coal and Coke Company v. Pennsylvania Railroad Company.  Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for unlawful discrimination in granting rebates and drawbacks to plaintiff's competitors.  Before FERGUSON, J.

The case was referred to Theodore F. Jenkins, Esq., as referee, who found for plaintiff, and awarded damages for delay in payment.  Upon exceptions to the supplemental report of the referee, FERGUSON, J., filed the following opinion:

An order has been filed this day sustaining the fourth exception to the supplemental report of the referee and dismissing all other exceptions.

The question involved in the fourth exception is the one of damages awarded for delay in payment.  In our opinion such damages cannot be allowed.  In this view we think we are sustained by the case of Pierce v. Lehigh Valley Coal Co., 232 Pa. 170.  In the case at bar the amount claimed was $93,000, and the actual damages found to be $20,883.64.  The result shows that the officers of the defendant company were justified in resisting the claim.  They, therefore, cannot be held at fault in respect to the delay.  An additional justification in resisting payment of the amount claimed is found in the fact that the defendant company was by law prohibited from making payment to a shipper of an amount to which it was not legally entitled.

Other facts appear in the opinion of the Supreme Court.

The referee found for plaintiff for $20,883.64, and judgment was entered for this amount. Plaintiff and defendant appealed.

*Errors assigned* by plaintiff were in sustaining various exceptions to the first report of the referee, and in sustaining the fourth exception to the supplemental report of the referee.

*Errors assigned* by defendant were in overruling various exceptions to the first and supplemental reports of the referee.

*Joseph Gilfillan,* of *Graham & Gilfillan,* for Mitchell Coal and Coke Company.

*Francis I. Gowen* and *John G. Johnson,* for Pennsylvania Railroad Company.

OPINION BY MR. JUSTICE MESTREZAT, June 27, 1913:

These two appeals are from the same judgment, were argued together, and may be considered and disposed of in one opinion. While the record is voluminous, as suggested by the learned judge of the Common Pleas, and numerous assignments of error have been filed by both parties, we will consider, as the parties in their printed briefs have done, the questions presented without specific reference to the several assignments.

The action was trespass to recover damages for unlawful discrimination in freight rates which the plaintiff company, as a shipper of coal and coke, alleges it sustained by reason of the defendant carrier allowing secret rebates or drawbacks on intrastate shipments to other shippers of coal and coke for whom it rendered substantially the same service as was rendered to the plaintiff during the period of action, namely, from April

1, 1897, to May 1, 1901. The suit was brought March 1, 1905. The pleas were not guilty and the statute of limitations. By agreement of the parties, the case was referred to a referee clothed with the powers of a master in chancery, and after an exhaustive consideration of both facts and law he reported in favor of the plaintiff. Certain exceptions to his report were sustained, but a judgment was entered against the defendant company for the amount of the damages which it was found the plaintiff sustained by reason of the rebates or drawbacks given the favored shippers. Both parties have appealed.

The referee found on ample testimony that the moneys paid by the defendant company to the favored shippers were unlawful rebates or drawbacks, and not, as claimed by it, compensation for use of their short line railroads or for services rendered by the shippers. This was a question of fact, and while the testimony was conflicting and a different finding might have been justified, the evidence was sufficient to warrant the referee's conclusion and, therefore, we would be infringing a settled rule if we reversed the finding of the referee confirmed by the judgment of the court.

The plaintiff's application to amend its statement was properly denied. The application was made about nine years after the close of the period of action, and more than five years after the suit was brought. The statement averred two specific charges of discrimination: (a) for the coal and coke shipped from Gallitzin between October, 1899, and May, 1901, the defendant company charged and collected from the plaintiff fifteen cents per ton more than it charged and collected from the Altoona, the Glen White, and the Millwood Companies; and (b) for the coal and coke shipped from five other collieries of the plaintiff and also from its Gallitzin mine before October, 1899, the defendant company charged and collected ten cents per ton more than it charged and collected from the Latrobe and Bolivar

Companies. In other words, the plaintiff's cause of complaint, as set out in its statement, is founded on the money paid to the Latrobe and Bolivar Companies, except the money paid for the shipments from its Gallitzin mine after October 1, 1899. It was proposed to amend the statement by alleging with respect to the plaintiff's six collieries (excepting Gallitzin after October, 1899,) discriminating acts on the part of the defendant and in favor of the Altoona, the Glen White, and Millwood Companies so that the plaintiff's whole claim, excepting Gallitzin after 1899, would be based on rebates paid the three favored companies during the period of action. The plaintiff also asked leave to amend the statement by alleging treble damages under the Act of June 4, 1883, P. L. 72. Both amendments were refused because they averred a new cause of action which was barred by the statute of limitations. The services rendered by the defendant for plaintiff's six collieries (except the Gallitzin before October, 1899,) and for the two favored companies, Latrobe and Bolivar, were similar and the effect of the rebate was to cause damage to the plaintiff to the extent of the rebate. The services of the defendant company to the Gallitzin colliery after October, 1899, were similar to those rendered the three favored companies, Altoona, the Glen White, and the Millwood, and the plaintiff was injured to the extent of the rebates allowed these companies. Each of these four collieries had a short line railroad and a locomotive which conveyed its product from the mine to the defendant company's railroad. The plaintiff's six collieries (except the Gallitzin after October, 1899,) had no means of conveying the product from the mine to the defendant's road. The unlawful discrimination for which the plaintiff company can recover is on coal shipped from its mines receiving from the defendant services similar to those rendered the favored companies. Here, as is apparent, if the averments of the original statement be true, the services rendered by defendant to Latrobe

and Bolivar Companies and the plaintiff's six compa-
nies were not similar to those rendered the other three
favored companies and the Gallitzin mine of the plain-
tiff for a short period. The proposed amendment to the
statement, therefore, alleges different acts of discrimina-
tion by the defendant company, causing the injury and
hence introduces a new cause of action.

The Practice Act provides that the declaration in an
action of trespass shall consist of a concise statement
of the plaintiff's demand as provided in the Act of 1806
which requires that "the whole amount that he, she or
they believe is justly due to him, her or them from the
defendant" be specified. It will be observed that the
statement in the present case declares for single dam-
ages in the sum named and that it contains no averment
that the suit was brought under the Act of 1883 to re-
cover treble damages. The statement avers the duty of
the defendant as a common carrier to treat every ship-
per alike in fixing freight rates for the transportation
of coal and coke under substantially similar circum-
stances and conditions, the failure to perform such duty
during the period of action, sets out the discriminatory
acts done by the defendant which the plaintiff company
alleges constituted an unlawful and unreasonable dis-
crimination against it as a shipper of coal and coke over
the lines of the defendant's railroad, and avers that by
reason of the premises the plaintiff had been damaged
in the aggregate sum of $93,905 payment of which was
demanded and refused. An action of trespass at com-
mon law is brought to recover compensation for the in-
juries sustained and a statutory action is for the pen-
alty imposed for the infringement of the statute.
Where, therefore, suit is brought on a statute to recover
double or treble damages we have regarded it as an ac-
tion for a statutory penalty and required the cause of
action as such to be averred in the statement: Hughes
v. Stevens, 36 Pa. 320; Dunbar Furnace Company v.
Fairchild, 121 Pa. 563; Fairchild v. Dunbar Furnace

Company, 128 Pa. 485; Allen v. Tuscarora Valley Railroad Company, 229 Pa. 97. Had the proposed amendment been allowed the cause of action would have been changed from a suit for single damages for unlawful discrimination to a suit for a penalty imposed by the Act of 1883 for the unlawful conduct of the defendant company. The learned court was right in refusing the amendment.

We think the court below did not err in limiting the plaintiff's right to recover to six years prior to the date the action was brought. The most that can be said for the testimony introduced by the plaintiff to toll the statute is that Mr. Joyce, the defendant's coal freight agent, promised Mr. Mitchell that the plaintiff company should in the future receive as good treatment and rates as other shippers and should be notified if there were any additional concessions of any kind made to any shipper. These promises, it appears, were not kept, and preferential rates were given to some of plaintiff's competitors. This was discreditable conduct on the part of the defendant company, and a plain violation of its duty as a common carrier. But it was simply a failure to observe a promise, and not fraudulent conduct, which prevents the running of the statute. As said by the learned trial judge: "No greater duty was imposed by the promise than the law imposed, but the breach was not a fraud or deceit or concealment in the sense contemplated by law, when it is sought to escape the operation of the statute of limitations."

The shipments to Greenwich, Philadelphia, were intrastate, and hence were properly included in this action. They were consigned to plaintiff at Greenwich and there the contract of carriage between the plaintiff and the defendant was fully performed and ended. What disposition the plaintiff made of the shipments at Greenwich, whether it sold them or sent them within or beyond the State is immaterial as affecting the question whether as between the plaintiff and the defendant they were intrastate or interstate.

The learned court was right in declining to hold, as requested by defendant, that the plaintiff had no cause of action in respect to shipments made after the fall of 1898 because the payments of freight on the shipments were made voluntarily by the plaintiff unaccompanied by any protest against the right of the defendant to charge and collect the same, with knowledge of the payments made to the Altoona and Glen White Companies. The plaintiff admits its president at one time heard that the Altoona and Glen White Companies were receiving from defendant compensation for the use of their locomotives in conveying coal from their mines to the defendant's road, but denies it knew that the defendant was paying those companies illegal rebates or drawbacks on the coal shipped by them. It is difficult to understand how the defendant can now allege that the plaintiff company had knowledge that unlawful rebates were being paid to the favored shippers at the time it paid the freight on its shipments. The defendant has consistently denied from the time the payments were made and continues to deny that they were unlawful rebates, and asserts they were made for services rendered in relief of defendant and were therefore lawful. Had the plaintiff company sought information on the subject from the defendant itself, it would have met with a denial that such payments were discriminatory or illegal rebates. It is, therefore, not apparent how the defendant can successfully allege that the plaintiff had knowledge of the payment of the rebates and at the same time deny that such payments were made. Be this as it may, it is sufficient to say that this action was not brought to recover back moneys paid by mistake or otherwise to the defendant, but to recover damages for the breach of the defendant's duty as a common carrier in unlawfully discriminating against the plaintiff by payment of rebates to competing shippers. In such case, the doctrine of voluntary payments can have no application: Borda v. Railroad Company, 141 Pa. 484. In this

case, the action was to recover damages for alleged illegal discrimination on coal shipments by payment of rebates, and the counsel for the carrier company set up the defense of voluntary payments, but it was not sustained, the referee whose report was confirmed by the Common Pleas and by this court saying (p. 493) : "The simple answer (to the contention of the carrier), however, is that this is not an action to recover back freights paid, but an action of tort, to recover damages for a breach of the defendant's duty to the plaintiffs."

The learned referee has found after a careful and exhaustive consideration of all the testimony that the service rendered by the defendant to the favored shippers in the transportation of coal and coke for them upon which drawbacks or rebates were paid was a like service, from the same place, upon like conditions and under substantially similar circumstances and for the same period of time as the service performed for the plaintiff company in the transportation for that company of coal and coke upon which no drawback or rebate was paid. This finding was confirmed by the learned court below. We have examined with care the voluminous testimony and the authorities cited by the learned referee and by counsel of the parties and are satisfied that the court and referee reached a correct conclusion. Without taking up and discussing the testimony which was done in the elaborate report of the learned referee, it is sufficient to say that it was ample to sustain his findings on this branch of the case.

The learned court below points out in its opinion the facts which defeat the plaintiff company's right to compensation for delay in payment of its claim.

We have examined the case with special reference to the several questions raised by all of the assignments filed by both appellants, and have discovered no error which would justify a reversal of the judgment entered by the court below.

The judgment is affirmed.