# Hall v. Pennsylvania Railroad Company.

*Railroads—Rates—Discrimination—Principal and agent — Evidence of agency—Sufficiency.*

1. In an action against a railroad company for unlawful discrimination in allowing plaintiff's competitors rebates on shipments of coal, there was evidence that plaintiff purchased coal from a firm of individuals at the price at the mine plus freight charges, that the freight charges were added to the price of the coal and paid by plaintiff to the firm; a witness testified to having seen an agreement between the defendant and the firm providing for the collection of freight from consignees by the firm, for which service the firm was to receive a commission from the railroad company. There was also evidence that freight on coal purchased from other persons was paid direct to the defendant, but on purchases from the firm the freight was paid to the firm. *Held,* that the evidence was sufficient to warrant the jury in finding that the firm was the agent of defendant for the collection of the freight.

*Statute of limitations — Railroads — Rates — Discrimination — Fraud—Concealment—Tolling of statute — Statement of claim — Amendments—New cause of action—Penalty—Trebling damages— Act of June 4, 1883, P. L. 72—Practice, C. P.*

2. Mere silence or the failure to keep a promise is not sufficient to stop the running of the statute of limitations, but where some affirmative act of concealment takes place it is not material whether the concealment is previous or subsequent to the beginning of the cause of action. The question is whether there was a design to prevent the discovery of the facts which gave rise to the action and whether the act operated as a means of concealment.

3. In an action against a railroad for unlawful discrimination it appeared that the claim was made for damages sustained by plaintiff more than six years before the action was brought. It also appeared that during such period plaintiff had complained to an official of defendant that rebates were being allowed, and such official denied it. The plaintiff relied on the statement of such official and the fraud was not discovered until one year before the action was brought. There was further evidence that after the discovery of the fraud by plaintiff, defendant's officials had told plaintiff's competitor to destroy all his records showing rebates. *Held,* that the evidence of concealment was sufficient to toll the statute of limitations until the discovery of the fraud.

4. In such case the instructions to destroy the records, although

subsequent to the time of the discovery of the fraud by the plaintiff, could be considered as tending to support other evidence of bad faith from the beginning.

5. In such case the statement of claim alleged that the plaintiff claimed damages to the extent of *$100,000 by reason of the fact that defendant charged plaintiff for the transportation of coal a sum in excess of that charged other persons upon like conditions, and allowed concessions to a competitor of plaintiff not allowed to plaintiff in violation of the Constitution of Pennsylvania and the statutes passed in pursuance thereof. Afterwards the statement was amended so as to allege that defendant's acts were in violation of the Constitution of Pennsylvania and statutes passed in pursuance thereof and particularly the Act of June 4, 1883, P. L. 72. At the trial which took place more than six years after the discovery of the fraud an amendment was offered but refused by the court claiming damages to the amount of $400,000, and alleging that plaintiff is entitled to and seeks to recover three times the actual damages suffered by him in accordance with the statutes in such case made and provided. Subsequently plaintiff moved to treble a verdict for single damages rendered by the jury. *Held,* (1) that the amendment increasing the damages to $400,000 did not introduce a new cause of action and should have been allowed; (2) that the amendment made before trial referring to the Act of June 4, 1883, P. L. 72, although making no express claim for treble damages, sufficiently notified defendant that the action was brought to recover the penalty imposed by the statute and entitled the plaintiff to recover treble damages on motion.

6. In an action for a penalty imposed by a statute, a recital of the facts constituting a cause of action within the statute, followed by a reference to the statute itself, is sufficient.

*Railroads—Rates—Discrimination—Measure of damages—Delay —Penalties.*

7. Where in an action against a railroad to recover damages for unlawful discrimination the jury found a verdict for plaintiff and allowed damages for delay in payment, and the plaintiff subsequently moved to have the verdict trebled, under the Act of June 4, 1883, P. L. 72, the court properly refused to permit recovery of damages for delay in payment as the plaintiff could not recover both damages for delay in payment and the penalty imposed by the statute.

8. Under the Act of June 4, 1883, P. L. 72, forbidding any undue or unreasonable discrimination on the part of common carriers against shippers and providing that any violation shall make the offending common carrier liable to the party injured for damages

in treble the amount of injury suffered, the injury suffered may be either the difference in the rates charged, under the provisions requiring the allowance of the same concessions and drawbacks to all persons upon like conditions under similar circumstances and during the same period of time, or it may be the injuries suffered by reason of undue or unreasonable discrimination where the conditions differ, in which case the injury would not necessarily be the difference in charges, but would be the damage suffered by reason of defendant's failure to furnish equal facilities for the requirements of shippers.

9. Where it appeared that plaintiff was a retail coal dealer, and that defendant allowed another retail coal dealer, a competitor of plaintiff, rebates of fifty, twenty-five and fifteen cents per ton of coal shipped, as well as a fixed sum to pay rent for their coal yard, the court properly charged the jury that plaintiff might recover the difference between the amounts paid by him and the amount he would have paid at the lowest rate charged or received from any person for like services and under similar circumstances and conditions.

*Jurisdiction, C. P.—Interstate commerce—State courts.*

10. Where in an action against a railroad for unlawful rate discrimination it appeared that part of the coal, upon which plaintiff had been charged a discriminatory freight rate, had been shipped in part through another state, the court properly refused to allow damages for such discrimination, as the acts of congress regulating the procedure in such cases have ousted the jurisdiction of the state courts over actions for the recovery of damages for unlawful discrimination in rates on interstate shipments.

Argued Jan. 18, 1915. Reargued March 13, 1916. Reargued Jan. 5, 1917. Appeals, Nos. 337 and 352, Jan. T., 1914, by plaintiff and defendant, from judgment of C. P. No. 5, Philadelphia Co., June T., 1906, No. 4858, on reduced verdict for plaintiff, in case of Samuel D. Hall v. The Pennsylvania Railroad Company. Before BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Reversed.

Trespass to recover damages for unlawful discrimination in freight rates charged by a railroad company. Before MARTIN, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $25,870.62 single damages and $25,219.17 damages for delay in payment. The court subsequently entered judgment for defendant n. o. v. for all of the verdict above the sum of $3,624.69, and judgment for plaintiff for the latter amount. Plaintiff and defendant appealed.

*Errors assigned* were various rulings of the trial judge referred to in the opinion of the Supreme Court.

*Francis Shunk Brown,* of *Simpson, Brown & Williams,* with him *William Findlay Brown,* for Samuel D. Hall.—The amendment claiming treble damages did not introduce a new cause of action, as plaintiff's statement expressly referred to the Act of June 4, 1883, P. L. 72: Henning v. Keiper, 37 Pa. Superior Ct. 488; Puritan Coal Mining Co. v. Penna. R. R. Co., 237 Pa. 420; Cox v. Penna. R. R. Co., 240 Pa. 27.

Mitchell Coal & Coke Co. v. Penna. R. R. Co., 241 Pa. 536, is not in point as the action was brought at common law in that case, and the statement did not in any way refer to the statute: Hogarty v. Philadelphia & Reading Ry. Co., 245 Pa. 443; Missouri, Kan. & Tex. Ry. Co. v. Wulf, 226 U. S. 570.

The evidence of concealment by defendant of the unlawful rebating was sufficient to toll the bar of the statute of limitations: Smith v. Blachley, 198 Pa. 173; Kirby v. Lake Shore & Mich. Southern R. R. Co., 120 U. S. 130, 30 L. Ed. 569; Manufacturers' Natl. Bank v. Perry, 144 Mass. 313 (11 N. E. Repr. 81) ; Cloyd v. Reynolds, 44 Pa. Superior Ct. 81, id. 52 Pa. Superior Ct. 365; Cook & Wheeler v. Chicago, Rock Island & Pac. Ry. Co., 81 Iowa 551 (46 N. W. Repr. 1080) ; Athey et al. v. Hunter et al., 65 Ill. App. 453; Bartalott v. International Bank, 14 Ill. App. 158; Boyd v. Boyd, 27 Ind. 429; Dorsey Machine Co. v. McCaffrey, 139 Ind. 545 (38 N. E. Repr. 208) ; Jackson v. Jackson, 149 Ind. 238 (47 N. E.

Repr. 963) ; Whitesell v. Strickler, 167 Ind. 602 (78 N. E. Repr. 845).

The evidence that Boyd & Company were the agents of the defendant was sufficient to go to the jury.

Under all the evidence, plaintiff was entitled to damages for delay in payment: Pierce v. Lehigh Valley Coal Co. (No. 2), 232 Pa. 170.

*Francis I. Gowen* and *John G. Johnson,* with them *Sellers & Rhoads,* for Pennsylvania Railroad Company. —The amendment to the statement of claim converting the cause of action set forth therein into one for treble damages, was properly refused: Mitchell Coal & Coke Co. v. Penna. R. R. Co., 241 Pa. 536.

The bar of the statute of limitations was not tolled as to shipments made prior to February 1, 1900: Smith v. Blachley, 198 Pa. 173.

The plaintiff's recovery was properly restricted to shipments on which he paid freights.

OPINION BY MR. JUSTICE FRAZER, July 1, 1916:

Plaintiff, a retail coal dealer, sued to recover damages from defendant for unlawful discrimination in freight rates for coal hauled between the anthracite coal regions and the City of Philadelphia. The action was brought February 1, 1906, and the damages claimed were for a period of alleged discrimination between June 1, 1891, and July 23, 1901. The original statement claimed damages to the extent of $100,000, which plaintiff alleged he suffered by reason of the fact that defendant "did charge, demand and receive from plaintiff for the transportation of said coal a sum in excess of that charged and received by defendant from divers other persons upon like conditions, under similar circumstances and during the same periods of time, and allowed such other persons, firms and corporations concessions in rates and drawbacks which were not allowed to plaintiff, all in violation of the Constitution of Pennsylvania

and the statutes passed in pursuance thereof." There is a further averment that defendant also paid the rent of the coal yard and offices of a favored shipper of coal; and the statement then sets forth that, by reason of fraudulent concealment by defendant, plaintiff was prevented from discovering the fact of overcharge until within a year prior to beginning suit. An amended statement was filed in 1909, in which plaintiff charged defendant's acts were "in violation of the Constitution of Pennsylvania and statutes passed in pursuance thereof, and particularly the Act of June 4, 1883, P. L. 72." Issue was joined on the pleas of not guilty and the statute of limitations. A stipulation signed by counsel was filed in which it was agreed the total number of tons of coal consigned to plaintiff during the period of time named was 268,136.05 of which 52,525.05 tons were shipped within six years of the beginning of suit, and 215,611 tons previous thereto. Of the former amount 36,092.19 tons, and of the latter amount 174,175.16 tons, were purchased from James Boyd & Company, alleged agents for defendants; the remainder elsewhere. The court charged the jury that if there was a fraudulent concealment which prevented plaintiff from making the discovery of rebates prior to the time of such alleged concealment, accepted by counsel as November 1, 1893, they might find damages that had accrued at that time, and also damages for rebates allowed within six years of the time suit was commenced. There was a verdict for plaintiff for $25,870.62 single damages to which the jury added $25,219.17, as damages for delay in payment, making a total of $51,089.79. The effect of this verdict was a finding that Boyd & Company were defendant's agents, and the statute of limitations had been tolled by reason of fraudlent concealment as to shipments before November 1, 1893. Plaintiff subsequently moved for judgment for treble damages as to shipments included in the verdict, and also as to other shipments previous to the six-year period, but subsequent to November 1, 1893.

This motion was denied and judgment n. o. v. was entered for defendant for all of the verdict above the sum of $3,624.69, representing the rebate paid to Downing Brothers, as to which amount judgment was entered for plaintiff. The effect of this judgment is to hold plaintiff's evidence of Boyd & Company's agency insufficient to submit to the jury, and, consequently, plaintiff could not claim damages on coal bought from them; that evidence of concealment of rebates was insufficient to toll the statute; and that no claim for treble damages or for damages for delay could be allowed. From the judgment entered as above stated both plaintiff and defendant appealed. As the various questions involved in the two appeals are more or less dependent upon each other, and require joint consideration in disposing of them, they will be considered together in this opinion.

The verdict, which is amply supported by the evidence, establishes that, during the time covered by the statement of claim, the firm of Downing Brothers, coal dealers in Philadelphia and competitors of plaintiff, paid the regular freight charges on coal shipped to them at the same rate as plaintiff paid for coal, under identical conditions and circumstances, and subsequently received rebates of fifty, twenty-five and fifteen cents a ton from defendant, and also received, in the years 1897 to 1900 inclusive, the sum of $9,500 a year to pay rent for their coal yard. Defendant contends the coal sold plaintiff by Boyd & Company was sold at a price delivered in Philadelphia, and that Boyd & Company paid the freight, hence plaintiff was not injured by the alleged rebates; there being no contractual relation between defendant and plaintiff, the right of action, if any, was against Boyd & Company. This view was sustained by the court below on demurrer to plaintiff's original statement of claim. In his amended statement plaintiff averred payment of the freight by him to defendant. It appears, from the testimony of Downing and plaintiff's clerk, Smedley, that both plaintiff and Downing Broth-

ers received from Boyd & Company the coal billed at the price at the mines, plus freight to Philadelphia. The verdict establishes that freight charges were added to the price of the coal, and paid by plaintiff to Boyd & Company, and the question arises whether there was sufficient evidence that Boyd & Company were agents of defendant to warrant its submission to the jury. In entering judgment non obstante veredicto the court below decided this question in the negative.

George H. Ross, a witness for defendant, testified that Boyd & Company were sales agents in the Philadelphia district for the Susquehanna Coal Company, a corporation owned or controlled by defendant. W. C. Downing, of the firm of Downing Brothers, to whom the rebates complained of had been paid, testified Boyd & Company were agents of defendant for collection of freight on coal, and that he paid freight to them as such. This witness also testified to having seen an agreement of their employment as agents in 1897 or 1898, that he read it throughout, and it contained provisions for collection of freight from consignees by Boyd & Company, for which service the latter were to receive a certain commission. At the trial plaintiff called for the production of this agreement, and in reply to the call defendant's counsel stated they had no such agreement, and officials of defendant, called for cross-examination, denied all knowledge of the existence of such contract. Other witnesses also testified Boyd & Company were agents for defendant company; and it appears freight on coal purchased by others than Boyd & Company was always paid direct to defendant, while on purchases from Boyd & Company it was paid to them. Although the testimony of Downing was not definite as to the period of time covered by the contract of agency which he claims to have seen, and he was not clear whether the agreement was a new one or the renewal of a former one, his testimony, with the other evidence in the case, was sufficient to submit to the jury on the question whether or not Boyd &

Company were agents of defendant for receiving freight charges: Hertzler v. Geigley, 196 Pa. 419; Singer Manufacturing Co. v. Christian, 211 Pa. 534.

The court below in its opinion refusing a new trial limited the damages to a period of six years preceding the beginning of the suit, thus holding plaintiff had not met the burden imposed upon him of proving facts sufficient to take the case out of the statute of limitations: Campbell's Admr. v. Boggs, 48 Pa. 524. The evidence relied upon by plaintiff for this purpose was, inter alia, an interview by himself with William H. Joyce, defendant's general freight agent, on November 1, 1893, when the following conversation took place:

"A.—I called on Mr. Joyce and stated to him that there was somebody underselling us in coal, and we could not hold our trade, and I thought they must have a lower rate of freight or a rebate, and he assured me we were all paying the same rate of freight, and that no rebates were being paid to anyone. I told him I could not understand it because they were offering coal from twenty-five to fifty cents a ton lower than we were, on the same coal, shipped by the same people, so he says 'I cannot do anything for you Mr. Hall' and he never did.

"Q.—You told him where your coal was coming from?

"A.—Yes, sir.

"Q.—From where, what did you tell him?

"A.—Pennsylvania Railroad Company coal, Lehigh and Wyoming regions.

"Q.—What did you tell him, did you tell him you were paying Boyd the freight?

"A.—Told him we paid Mr. Boyd for his coal and freight.

"Q.—And he said nobody was getting any better rates than you?

"A.—Yes, sir.

"Q.—Did you believe what Mr. Joyce told you?

"A.—I certainly did."

The court below held this conversation insufficient to

toll the statute on the ground that mere denial of guilt did not necessarily amount to a fraudulent concealment of the wrongful act, nor did such denial convert the original wrong into a fraud, relying upon the case of Despeaux v. Penna. R. R. Co., 87 Fed. Repr. 794, and Mitchell Coal & Coke Co. v. Penna. R. R. Co., 241 Pa. 536. In the former case the inquiry concerning the acts referred to the time of the interview, and not to the time the wrongful acts were committed, and there was no fraudulent concealment of the prior act. In the latter case, there was a promise to plaintiff that in the future he would receive the same concessions as other shippers, and a breach of this promise was held not such a fraudulent concealment as would toll the statute. Mere silence, or failure to keep a promise, is not sufficient to stop the running of the statute of limitations. There must be a separate and distinct act of concealment: Smith v. Blachley, 198 Pa. 173; Cloyd v. Reynolds, 44 Pa. Superior Ct. 81. But where some affirmative act of concealment takes place it is not material whether the concealment is previous, or subsequent, to the beginning of the cause of action. The question is whether there was a design to prevent the discovery of the facts which gave rise to the action and whether the act operated as a means of concealment: Whitesell v. Strickler, 167 Ind. 602; Boyd v. Boyd, 27 Ind. 429; Jackson v. Jackson, 149 Ind. 238. In Cook & Wheeler v. Chicago, Rock Island & Pac. Ry. Co., 81 Ia. 551, it was held a statement that no rebates or concessions were allowed any shipper was sufficient to toll the statute.

The statement of Joyce, that no rebates were being given, was calculated to deceive by preventing inquiry as to rebates, both before and after the time of the interview. While no rebates may have been given at the precise moment plaintiff and Joyce met, and the statement may, therefore, have been true in a literal sense, yet plaintiff's inquiry, and Joyce's answer, were not limited to that exact time, but referred to a general prac-

tice of rebating, both before and after their interview. The statement was, therefore, untrue in a broader sense, and the one in which plaintiff must have understood it, and amounted to an affirmative act of concealment of a course of rebating which the jury found existed before, at the time of, and subsequent to the conference. The answer tended to disarm suspicion and prevented inquiry as to past, present and future rebating. In addition to the evidence of the interview with Joyce, there was evidence that about the same time Boyd, found by the jury to be defendant's agent, told plaintiff all dealers were getting the same rates, and Downing testified the rebates to him were paid through a third person in order to conceal the transaction, and that in 1907 he was directed by one of defendant's officials to destroy all his records showing rebates. While the instructions to destroy the records were subsequent to the time of the discovery of the fraud by plaintiff, they may properly be considered as tending to support other evidence of bad faith from the beginning: Cummings v. Cummings, 5 W. & S. 553; McHugh v. McHugh, 186 Pa. 197; Com. of Penna. v. Marion, 232 Pa. 413, 423. On the whole, we deem the evidence sufficient to warrant the conclusion of the jury that there was such active concealment by defendant as to toll the statute of limitations.

The fact that defendant had been paying rebates was discovered by plaintiff in September, 1905, and this suit was brought February 21, 1906. The original statement of claim is for damages to the extent of $100,000 which plaintiff alleges he suffered by reason of the unlawful payments of rebates by defendant to other shippers. There is no express reference in this statement to the Act of June 4, 1883, P. L. 72, but defendant's acts are alleged to be "in violation of the Constitution of Pennsylvania and the statutes passed in pursuance thereof." On May 8, 1909, an amendment was filed which alleged defendant's acts were "in violation of the Constitution of Pennsylvania and statutes passed in pursuance there-

of and particularly the Act of June 4, 1883, P. L. 72."
This amendment contains no express statement that the
claim is for treble damages.   During the trial of the case
on April 18, 1913, an amendment was offered, but re-
fused by the trial judge, increasing the amount of dam-
ages claimed to $400,000 and alleging plaintiff "is en-
titled to and seeks to recover three times the actual dam-
ages suffered by him, in accordance with the statutes in
such case made and provided." Subsequent to the ver-
dict, on May 1, 1913, a motion to increase the verdict by
imposing treble damages was made and refused by the
court below.

The right of plaintiff in a suit under the Act of 1883
to have damages trebled on motion has been recognized
by this court in a number of instances, the only question
in such case being whether or not the jury in the verdict
rendered had or had not included treble damages.   One
of the most recent decisions is the case of Cox v. Penna.
R. R. Co., 240 Pa. 27, where it is said: "The verdict for
single damages was conclusive as to the question of un-
due and unreasonable discrimination.   This left nothing
to be considered by the jury in connection with the tre-
bling of the damages.   The statute made provision for
that."

The action of the court below in the present case makes
it clear that no treble damages were included in the ver-
dict and the question, therefore, is whether the amend-
ment offered at the trial, followed by the motion for
treble damages, sets up a new cause of action which was
barred by the statute of limitations, because the claim
was not made within six years following the time the
fraud was discovered in September, 1905.   The proposed
amendment of April 18, 1913, increases the damages
claimed in the first paragraph of the statement of claim
to $400,000.   This additional damage claimed is not by
virtue of a distinct cause of action, but merely increases
the amount of plaintiff's claim for the cause already al-
leged in the original statement.   The amendment is,

therefore, within the rule that an increase in the measure of damages claimed is not a new cause of action and may be allowed even after the statute of limitations has run. In Armstrong & Latta v. Philadelphia, 249 Pa. 39, an amendment which introduced an additional element of damage drawn out of the same circumstances was held proper after the statutory period, and in Puritan Coal Mining Co. v. Penna. R. R., 237 Pa. 420, an amendment claiming a larger amount of damage as a consequence of certain acts of illegal discrimination in the distribution of coal cars was permitted to be made after the statutory period. The amendment in the present case was proper, therefore, in so far as the increase of the amount of claim to $400,000 is concerned.

The amendment sought to be made at the trial claiming treble damages stands on a different footing. An action of trespass at common law is brought to recover compensation for the injuries sustained by plaintiff by reason of defendant's wrongful acts. An action under a statute like the one in question is brought to recover the penalty imposed by the act, and an amendment changing the form of action from one at common law to an action under the statute for a penalty has been uniformly considered by our courts as setting up a new cause of action, and therefore not allowed if the statute of limitations has run at the time the amendment is offered: Mitchell Coal & Coke Co. v. Penna. R. R. Co., 241 Pa. 536. The trial in this case occurred more than six years after suit was begun and unless the claim for treble damages was included within the scope of the original statement of claim, or the amendment of 1909, the claim for treble damages cannot be allowed. The original statement of claim contains no express reference to any particular statute, but merely refers to the violation of the provisions of the Constitution and statutes passed in pursuance thereof. The amendment of 1909 charges a violation of the Constitution and statutes in the same general language, but adds "particularly

the Act of June 4, 1883, P. L. 72," making no express claim, however, for treble damages. Is this a sufficient notice to defendant that the action was brought for treble damages under the provisions of that act? The common law rule is that where an offense is created by statute and a penalty inflicted, the mere statement of the facts constituting the offense will be insufficient, for there must be an express reference to the statute, as by the words "contrary to the form of the statute," etc., in order that it may appear that plaintiff grounds his case upon, and intends to bring it within, the statute: 1 Chitty Pleading, 16th Ed., *237. And where the act or omission which is the foundation of the suit was not an offense at common law, it is necessary in all cases to conclude "against the form of the statute" or "statutes," or to show at least that the declaration is founded on the statute by introducing the words "de placito transgressionis et contemptus contra formam statuti": 1 Chitty· Pleading, 16th Ed., *387. In Howser & Howser v. Melcher, 40 Mich. 185, which was an action on a statute allowing treble damages for forcible entry, the declaration did not refer to the statute as the basis of plaintiff's right to recover. The court said (page 189) : "Pleading the statute is stating the facts which bring the case within it, and counting on it, in the strict language of pleading, is making express reference to it by apt terms to show the source of right relied upon."

Our own decisions seem to agree that it is sufficient to recite the facts constituting a cause of action within the statute and then follow by a reference to the act itself. In Rees v. Emerick, 6 S. & R. 286, which was an action for damages for illegal distraint of goods, it was said (page 288) : "It is a general principle that where a statute gives increased damages, the writ should conclude against the form of the statute." In Hughes v. Stevens, 36 Pa. 320, where an action of trespass at common law was brought for damages for cutting timber on plaintiff's land, it was said (page 324) : "The third error is

to the action of the court in trebling the damages found by the jury. The counts in the narr. are in accordance with the common law actions and there is in them no reference whatever to the statute under which the recovery of treble damages is claimed. This is undoubtedly an omission which precluded the plaintiff's right to treble the damages.......If the statutory action be intended, the defendant should be apprised of it in the usual way, namely, in the narr., so that he may shape his defense accordingly. We have held it to be sufficient that the narr. conclude with an averment that the trespass was against the act of assembly, etc."

The Act of June 4, 1883, P. L. 72, is entitled "An act to enforce the provisions of the seventeenth Article of the Constitution relative to railroads and canals." It contains three sections. Section one makes unlawful any undue discrimination in freight charges or facilities by common carriers or any officer, superintendent, manager or agent thereof. Section two provides that the charges shall be uniform and concessions in rates and drawbacks shall be allowed to all alike, and all undue discrimination is forbidden. Section three, in the language of the Constitution, forbids any president, director, officer, agent or employee of any canal or railroad company to be interested directly or indirectly in furnishing material or supplies, etc., to such company, and, for a violation of the act in this respect, imposes a penalty of fine or imprisonment. The only provision allowing an action to the shipper is the concluding sentence of section two as follows: "Any violation of this provision shall make the offending company or common carrier liable to the party injured for damages treble the amount of injury suffered." When the only right of action provided by the act is a liability to the party injured for treble the amount of the injury suffered, it is difficult to see how a reference to the act could fail to notify defendant that the suit was brought to recover treble dam-

ages.   No other kind of damages is mentioned under the express wording of the statute.

The case of Mitchell Coal & Coke Co. v. Penna. R. R. Co., 241 Pa. 536, relied upon by defendant, does not establish a different rule, as in that case there was no reference either to the act or to the fact that treble damages were claimed.

It follows from a consideration of the above cases and the Act of 1883 that the amendment proposed on the trial should have been allowed, as it did not introduce a cause of action different from that covered by the previous pleadings.   As counsel have agreed on the facts as to shipment of coal, etc., the judgment can be entered as if the amendment had been made.

If plaintiff is permitted to recover treble damages under the Act of 1883, it is plain he cannot at the same time claim damages for delay in payment of the injury sustained by him under the common law.   The remedy given by the Act of 1883 is penal in character and will not be construed to include other damages not covered by the wording of the act.   In Hughes v. Stevens, 36 Pa. 320, it is said in regard to a similar statute: "The statutory action is cumulative to the common law remedy, or perhaps rather an optional or alternative remedy; for a resort to either would be a bar to the other." In Dunbar Furnace Co. v. Fairchild, 121 Pa. 563, which was an action to recover damages for cutting timber, it was held error for the court to treble the amount of a verdict which included interest as well as single damages.   This case was followed in McCloskey v. Powell, 138 Pa. 383, where it is said (page 400) : "The jury found the value of the timber trees, and computed interest thereon at $641.88.   The court directed judgment to be entered for three times the value of the timber, and excluded the interest therefrom.   The precise point was ruled in Dunbar Furnace Co. v. Fairchild, 121 Pa. 563, and is clear upon principle.   The treble damages are given as a penalty, and we know of no case in which a

penalty bears interest until the plaintiff's right to it has been settled by judgment. The learned judge of the court below was right, therefore, in excluding the interest, and entering the judgment for three times the single value of the trees cut and carried away." Under the above decisions the allowance of damages for delay is inconsistent with the action for statutory penalty under the Act of 1883 and must be disallowed.

The first question raised by defendant's appeal is whether the measure of damages of a shipper who had not received the benefit of a concession in rates given a competitor, is the amount of rebate given the latter. The trial judge charged that if defendant, or its agents, paid rebates or allowances to any other person, which were not also allowed plaintiff, the latter might recover the difference between the amount paid him and the amount he would have paid at the lowest rate charged or received from any person for like services and under similar circumstances and conditions. The correctness of this ruling must depend upon a proper construction of Section 2, of the Act of June 4, 1883, P. L. 72, which provides that "no railroad company or other common carrier, engaged in the transportation of property, shall charge, demand or receive from any person, company or corporation, for the transportation of property or for any other service, a greater sum than it shall charge or receive from any other person, company or corporation for a like service, from the same place, upon like conditions and under similar circumstances; and all concessions in rates and drawbacks shall be allowed to all persons, companies or corporations alike for such transportation and service upon like conditions, under similar circumstances, and during the same period of time. Nor shall any such railroad company, or common carrier, make any undue or unreasonable discrimination between individuals, or between individuals and transportation companies, for the furnishing of facilities for transportation. Any violation of this provision shall make the offending

company or common carrier liable to the party injured for damages treble the amount of the injury suffered."

In Hoover v. Penna. R. R. Co., 156 Pa. 220, an action was brought by a coal dealer to recover the amount of a rebate of a certain sum per ton which was paid to a manufacturing establishment by defendant. The lower court there instructed the jury that plaintiff's measure of damages would be the difference between the charge to the manufacturing company and to plaintiff. This court held the instruction erroneous, saying (page 244): "It does not at all follow that the amount of injury suffered is the difference in the rates charged. It might be, or it might not be, but, in any event, it must be a subject of proof, and there was no proof in the case of the actual damages sustained." Mitchell Coal & Coke Co. v. Penna. R. R., 241 Pa. 536, seemingly contradicts that decision. There, the complaint was by one coal shipper of a rebate allowed another, under the same circumstances and conditions, and the referee stated the measure of damages was the amount of concession which would have been paid plaintiff had he received the same rebate as the favored shipper. The Hoover case was cited before the court at that time; the finding of the referee was, however, affirmed, this court saying (page 540): "The effect of the rebate was to cause damage to the plaintiff to the extent of the rebate. The services of the defendant company to the Gallitzen Colliery after October, 1899, were similar to those rendered the three favored companies, Altoona, the Glen White and the Milwood, and the plaintiff was injured to the extent of the rebates allowed these companies." A comparison of the facts in the above cases shows the decisions are not inconsistent with each other. In the Hoover case plaintiff was a coal dealer, and the favored company a manufacturing establishment, and it was held in that case there was no equality of conditions which would justify plaintiff in demanding the same rate given the manufacturing company. In the Mitchell Company case the

discrimination was made between companies operating under like conditions and circumstances. The "injury suffered," within the meaning of the term used in the Act of 1883, may be either the difference in the rates charged under the provisions requiring the allowance of the same concessions and drawbacks to all persons "upon like conditions, under similar circumstances, and during the same period of time" as in the Mitchell Company case, or it may be the injury suffered by reason of "undue or unreasonable discrimination" though the conditions differ, in which case the injury would not necessarily be the difference in charges, but would be the damage suffered by reason of failure to furnish equal facilities or other requirements of shippers. The case of Union Pacific Ry. v. Goodridge, 149 U. S. 680, involved the construction of a Colorado statute similar to our own statute requiring railroads to make the same concessions to all persons alike. It was there held the measure of damages was the amount of the rebate allowed other shippers. The case of Penna. R. R. Co. v. International Coal Mining Co., 230 U. S. 184, relied upon by defendant as establishing a different rule, is distinguishable from the present case as it involved a construction of the Interstate Commerce Act, which makes the published rates the legal rate, and provides a penalty for departing therefrom. In the present case, as in the Goodridge case, the question involved is the construction of a state statute which makes the lowest rate of freight the legal one, and requires all concessions to be made to all persons alike, providing the conditions and circumstances are the same. This distinction was pointed out in Penna. R. R. Co. v. International Coal Mining Co., supra. Under the above authorities, there was no error in the charge in regard to the measure and proof of damages.

Objection is also made that the State courts are without jurisdiction of an action for unlawful discrimination in freight rates as to such part of the coal which was shipped plaintiff from the Pennsylvania anthracite

mining regions by a route which extended for a part of the way into the State of New Jersey, the contention being that jurisdiction over such shipments is within the exclusive province of the Federal Courts. The right to regulate commerce between the states is vested in congress by the Constitution of the United States, and, in so far as congress has acted with reference to the particular subject-matter, the states are without power to interfere. While the mere creation of the Interstate Commerce Commission, and the granting to it of a large measure of control over commerce between the states, does not, in the absence of action taken by it, destroy the power of the state to regulate incidental matters relating to interstate commerce, and affecting the welfare and convenience of its citizens (Missouri Pacific Ry. v. Larabee Flour Mills Co., 211 U. S. 612; Puritan Coal Mining Co. v. Penna. R. R., 237 Pa. 420), the question before us in the present case is one of unlawful discrimination in freight rates, which specific subject-matter has been covered by federal legislation, and all disputes relating thereto are within the exclusive jurisdiction of the Federal Courts.

The cases of the Puritan Coal Mining Co. v. Penna. R. R., 237 Pa. 420; Walnut Coal Co. v. Penna. R. R., 237 Pa. 410; Sonman Shaft Coal Co. v. Penna. R. R., 241 Pa. 487, and others relied on by plaintiff, were all actions for damages for unlawful discrimination in the furnishing of cars, and it was there held, in effect, that as neither congress nor the Interstate Commerce Commission had undertaken to legislate concerning the particular subject-matter, which was one of local concern, the federal and state jurisdictions were concurrent, even though the cars were ultimately to be used in interstate commerce. In Clark Bros. Coal Mining Co. v. Penna. R. R. Co., 241 Pa. 515, the various decisions were discussed by the court below in an opinion which was affirmed on appeal, and it was said the coal, which it appeared was sold f. o. b. cars at the mines, did not become

the subject of interstate commerce until actually in transit to points without the State. In this respect the cases are within the express provisions of the Interstate Commerce Act of February 4, 1887, 24 U. S. Stat. 379, c. 104, and its amendment of June 29, 1906, 34 U. S. Stat. 584, c. 3591, which prevent the application of the act to the "transportation of passengers or property, or to the receiving, delivery, storage or hauling of property wholly within one state and not shipped to or from a foreign country, from or to any state or territory as aforesaid." In the present case the subject-matter is discrimination in rates by the allowance of rebates on coal actually transported, and is clearly within the regulations established by congress and the Interstate Commerce Commission if the passage outside of the State, in the course of its journey from one point to another within the State, is sufficient to bring it within the definition of interstate commerce, and the exclusive jurisdiction of the Federal Courts. This question was decided in the negative in Commonwealth v. Lehigh Valley R. R. Co., 129 Pa. 308, and affirmed in Lehigh Val. R. R. Co. v. Penna., 145 U. S. 192. It appears in that case the matter objected to was taxation on transportation receipts on goods hauled between points within the State, but passing for a short distance outside the State. This case was commented on, and limited in its effect, by the United States Supreme Court in Hanley v. Kansas City Southern Ry. Co., 187 U. S. 617, 621. It was there pointed out that the Lehigh Valley R. R. case (145 U. S. 192) was merely one of a local tax on property within the State, based on receipts from transportation wholly within the State, and without including receipts on property which passed outside its borders, in the course of carriage between intrastate points. The rule laid down in the Hanley case has been followed in later cases: West Virginia Rail Co. v. Baltimore & Ohio R. R. Co., 26 I. C. C. Rep. 622; United States v. Del., Lack. & Western R. R. Co., 152 Fed. Repr. 269. In the latter

case it was held the word "wholly" as used in the provision of the Interstate Commerce Act, which declares it shall not apply to "transportation of property or to the receiving, storage, delivery or hauling of property wholly within one state," includes within the act shipments which pass outside the State in the course of their journey between points within. Since the subject-matter in the present case is one on which congress has legislated and the goods in transportation come within the Interstate Commerce Acts by virtue of their passage outside the State, the State courts have no jurisdiction for the recovery of damages as to such part of the goods which were carried through New Jersey.

It follows that the judgment of the court below must be reversed and judgment entered for plaintiff for an increased amount. The amount of the judgment will be computed by taking the difference between the sum of $93,111.88, which sum is made up as per computation based upon a stipulation entered into between the parties as to the tonnage and rebates allowed thereon, and the sum of $10,225.75, being the amount of rebates on tonnage which passed outside the State of Pennsylvania in the course of shipment, to wit, $82,886.13, which multiplied by three makes $248,658.39, the amount of the judgment.

Judgment reversed and judgment for plaintiff for $248,658.39.


On Reargument:

PER CURIAM, March 12, 1917:

These appeals were first heard January 18, 1915, and a reargument, ordered of our own motion, was heard March 13, 1916. On July 1, 1916, an opinion was filed by Mr. Justice FRAZER, entering judgment for the plaintiff for $248,658.39. A second reargument was ordered on the application of learned counsel for the defendant, to enable them to reargue the questions of the application of the statute of limitations and of the right of the

plaintiff to recover treble damages. This last argument was heard January 5, 1917. After due and careful consideration of all that has been earnestly and ably urged in asking for a modification the judgment entered July 1, 1916, we are of one mind that it ought not to be disturbed, in view of all the facts in the case, and the prothonotary is directed to remit the record.